**EXHIBIT 26**

**EXHIBIT**

**26**

## DECLARATION OF CELESTE BYRD

Pursuant to 28 U.S.C. § 1746, the undersigned states as follows:

     1.      My name is Celeste Byrd.  I am over the age of twenty-one (21) and have personal knowledge of the matters set forth herein.

     2.      I am a Paralegal Specialist for the Miami Regional Office of the United States Securities and Exchange Commission ("SEC") located at 801 Brickell Avenue, Suite 1950, Miami, Florida 33131.

     3.      On April 6, 2021, I searched Florida AUCC website at www.floridaucc.com to determine whether Harbor City Capital Corp, Harbor City Digital Venture and HCC Media Funding, had any UCC liens.

     4.      I conducted the search by entering Harbor City Capital Corp, Harbor City Digital Venture and HCC Media Funding, which did not generate any results.

     I declare under penalty of perjury that the foregoing is true, correct, and made in good faith.

/s/ Celeste Byrd
Celeste Byrd

Executed on this  16th  day of April, 2021.

**EXHIBIT 27**

**EXHIBIT**

**27**

## DECLARATION OF PAUL NATER

Pursuant to 28 U.S.C. Section 1746, the undersigned states as follows:

1.  My name is Paul Nater. I am over twenty-one years of age and have personal knowledge of the matters set forth herein. I am the president of Nater & Associates, Inc. ("Nater & Associates"), a California company that facilitates proof of funds transactions for clients who require financial liquidity for their projects and need to show asset strength while qualifying for financing.

2.  In late November 2019, I was contacted by Jonathan Paul Maroney, CEO and president of Harbor City Capital Corp. ("Harbor City"). A mutual associate had referred him to Nater & Associates. Maroney was looking to obtain a standby letter of credit ("SBLC") in the amount of $5,000,000 for the purpose of securing a loan to fund his projects. Specifically, Maroney told me that he wanted to use the SBLC to strengthen Harbor City's financial position and to have it serve as the company's collateral. If there is a default, the SBLC could be called upon to pay back debt. In many cases, the SBLC can also qualify a borrower who might otherwise not be considered viable to third parties, such as lenders and investors.

3.  In our initial communications, I recall telling Maroney about a company called First American Financial, Inc. ("First American") and discussing the possibility of First American issuing the SBLC for Harbor City. A true and correct copy of my initial email communication with Maroney is attached hereto as Exhibit A. Maroney mentioned that he was also preparing a much larger project and wanted to know what was the largest SBLC First American could provide to Harbor City.

4.     Within days after Maroney contacted me, Harbor City and First American entered into an "Agreement for Service" dated November 25, 2019 and Rider dated December 4, 2019. Maroney signed the Agreement for Service on behalf of Harbor City as its chief executive officer.  True and correct copies of the Agreement for Service and Rider are attached hereto as Composite Exhibit B.  Pursuant to the Agreement for Service and Rider, First American was to assist Harbor City in "restructuring its asset position" in the amount of $5,000,000, and would provide Harbor City with "Certificate(s) of Deposit" valued at $5,000,000.  The Agreement for Service further provided that the Certificates(s) of Deposit would be "the asset basis" for the issuance of an SBLC of $5,000,000 in favor Harbor City.

5.     Among the preconditions contained in the Agreement for Service and Rider, Harbor City, upon execution of the agreement, was required to deliver a total of $257,500 in certified funds to First American.  Harbor City, however, never delivered these funds to First American.  As a result, on December 17, 2019, I received an email from First American attaching a Notice of Cancellation advising me that the transaction with Harbor City would be cancelled at close of business on December 18, 2019 due to Harbor City's failure to perform. True and correct copies of this email and the Notice of Cancellation are attached hereto as Composite Exhibit C.

6.     On December 18, 2019, I forwarded the Notice of Cancellation to Maroney via his email address and informed him that the transaction had been canceled.  A true and correct copy of this email is attached hereto as Exhibit D.

7.     At no point was Harbor City or Maroney issued Certificates of Deposit, the SLBC, or other financial instrument by First American.  Rather, the parties merely entered into

2

the Agreement for Service and Rider which did not materialize due to Harbor City's failure to perform.

I declare under penalty of perjury that the foregoing is true, correct, and made in good faith.

*Paul Nater*
PAUL NATER

Executed on this 19 day of June, 2020.

3

EXHIBIT

A

| | |
|---|---|
| **From:** | JP Maroney |
| **To:** | |
| **Subject:** | Re: HARBOR CITY CAPITAL CORP. |
| **Date:** | Sunday, November 24, 2019 10:37:03 AM |

Good morning Paul

I didn't recognize the number when the call came in. My apologies.

Paul D is preparing an email with a few changes/additions we need on the agreement, but overall things look good.

I would definitely like to get this wrapped up early Monday.

On another note: What is the largest SBLC you/1stAm could provide to us for these same purposes? ($50M, $100M, $500M???)
We're preparing a much larger project for Jan 1, and will likely be circling back with you for that as well.

Regards,

JP

On Sat, Nov 23, 2019 at 8:57 PM ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
< ▓▓▓▓▓▓▓▓▓▓▓▓ > wrote:
> I just tried to call. Got your voicemail.
>
> Regards,
> Paul Nater
> Nater and Associates Inc.
> ▓▓▓▓▓▓
> www.naterassociatesinc.com
>
>> On Nov 23, 2019, at 17:22, JP Maroney < ▓▓▓▓▓▓▓▓ > wrote:
>>
>>
>> Paul give me a call plz
>> ▓▓▓▓
>>> On Sat, Nov 23, 2019 at 5:41 PM ▓▓▓▓▓▓▓▓▓▓
>>> < ▓▓▓▓▓▓▓▓ > wrote:
>>>
>>> Hello JP,
>>>
>>>
>>> Attached is a redacted copy of an MT760 *SBLC) sent earlier this year. Tour
>>> MT760 will be from CITI Bank (not Deutsche Bank). The verbiage is the
>>> same as it is standard internationally accepted format and verbiage.

Once we receive back the executed documents sent to you, the RWA will be produced. That email will include reference to the CITI Bank MT760. The SBLC is the instrument to be used as collateral and the transmission will be MT760 thru CITI Bank. The example attached had to be redacted to protect the confidentiality of the client(s) involved.

I hope this helps. I am standing by. Here it is 2:40pm so we still have a few hours to get anything done before they close. I was under the impression you were in a hurry to get this all done so please advise at your earliest.

Thank you,

Regards,

*Paul Nater*

**Nater Associates Inc.**

▬▬▬▬▬ Woodland Hills, CA 91364

▬▬▬▬▬ Email
www.naterassociatesinc.com   Website
▬▬▬▬ Office / Cellular

**DISCLAIMER:**
Receipt of these documents is acknowledgment and acceptance that this is privileged, proprietary and confidential and will not be forwarded to any party(s) without prior written consent from the sender.. Upon receipt of any such documents you, as the Recipient, hereby acknowledge this Warning and Disclaimer. These Confidential communications are protected under Gramm-Leach-Bailey Act 15 USC, Sub chapter 1, sections 6801-6809 and other laws addressing the disclosure of Non-Public Personal Information. Any misuse of this material will result in prosecution to the fullest extent of the law. Note: This communication and any documents, or files, attached to it, constitute an electronic communication within the scope of the Electronic Communication Privacy Act, 18 USCA 2510. This communication may contain confidential, or privileged information intended for the sole use of the designated recipients(s). The unlawful interception, use, or disclosure of such information is strictly prohibited under 18 USCA 2511 and any applicable laws.

**From:** JP Maroney
**Sent:** Saturday, November 23, 2019 8:50 AM
**To:** ███████████████ ; Pdonion
**Subject:** Re: HARBOR CITY CAPITAL CORP.


Paul (N),


Paul (D) wants to see the language of the SBLC (or at least a previously issued one). And, also the Citi reference included in the contract which I mentioned earlier.


I'm ccing Paul D on this email. Please reply all when responding.


Much thanks!


JP


On Sat, Nov 23, 2019 at 11:30 AM JP Maroney <███████████████> wrote:

> Also will you be sending me a contract, or will I see a contract from somewhere that outlines the $110k in SWIFT fees from Citi, etc?
>
> I assume your commission is coming out of Citi side or 1st American is paying you direct?
>
>
> On Sat, Nov 23, 2019 at 11:29 AM JP Maroney <███████████████> wrote:
>
>> Great. Thanks for the response.
>>
>> I don't see mentioned in the contract that the SBLC will be issued through Citi. I would like to see that added. You're welcome to wait until I have any additional changes/requests from me or Paul.
>>
>> JP
>>
>>
>> On Sat, Nov 23, 2019 at 11:27 AM ███████████████

 > wrote:

Hello JP,

The only fees that will be charged will be $350,000 total. The fees mentioned in the two p-notes would only come into play if you defaulted on your contracts and the issuer were to be called in to pay the default. We know that would not be your intention. When the SBLC matures or expires so do the p-notes. The issuer needs recourse in the remote case that you default so they can protect their investors behind the SBLC.

Just like a co-signer of a car loan, they are only on-call if the car buyer fails to pay the contract for the car.

Fee breakdown will be as follows:

$110,000 for the SWIFT MT760 from the bank.

$240,000 for the SBLC.

Please let

Me know if you or your attorney have any other questions. If I get the documents reverted early enough today, I might possibly get the RWA for you today as well. Please advise.

Regards,

Paul Nater

Nater and Associates Inc.

www.naterassociatesinc.com

On Nov 23, 2019, at 08:13, JP Maroney

< ████████ > wrote:

Thanks Paul,

I forwarded this last night to Paul Donion, our general counsel whom you met by phone the other day.

One question, can you provide me with a schedule of fees that will be charged in the overall facilitation -- "who gets what and how much".

Thanks

JP

On Fri, Nov 22, 2019 at 8:45 PM
< ████████ > wrote:

Hello JP,

Here is the first part of the transaction. Once we receive the executed documents, the RWA will follow. If we get the signed docs back tonight or in the morning, they will be able to get the RWA out tomorrow. They are open in Saturday. I will be standing by.

Regards,

Paul Nater

Nater and Associates Inc.

████████

www.naterassociatesinc.com

Begin forwarded message:

**From:** "████████"

< ██████████ >
**Date:** November 22, 2019 at 16:55:13 PST
**To:** "████████████████████"
< ████████████ >
**Subject: HARBOR CITY CAPITAL
CORP.**

Mr. Nater;

Attached, please find documentation
requested
by your client.

Best Regards
S. Jones
SVP
Financial Services

[ ██████████ ]

--

**JP MARONEY**
Founder & CEO
Harbor City Capital

Email: ████████████

Toll Free: ████████████
Intl: + ████████████

Fax: ████████

Corp: http://www.HarborCity.com

Connect With JP...
Book Appointment: http://www.MeetWithJP.com

LinkedIN: http://www.linkedin.com/i████████
Facebook: http://www.facebook.com/████████

Twitter: http://www.twitter.com████████

YouTube: http://www.YouTube.com████████

--

**JP MARONEY**
Founder & CEO
Harbor City Capital

Email: █████████████

Toll Free: ██████████████
Intl: +███████████████

Fax: ████████

Corp: http://www.HarborCity.com


Connect With JP...
Book Appointment: http://www.MeetWithJP.com

LinkedIN: http://www.linkedin.com/in/████████
Facebook: http://www.facebook.com/███████████

Twitter: http://www.twitter.com███████

YouTube: http://www.YouTube.com█████████




--

**JP MARONEY**
Founder & CEO
Harbor City Capital

Email: ██████████████

Toll Free: ████████████████
Intl: ███████████████

Fax: ██████████

Corp: http://www.HarborCity.com


Connect With JP...
Book Appointment: http://www.MeetWithJP.com

LinkedIN: http://www.linkedin.com/in/█████████
Facebook: http://www.facebook.com█████████

Twitter: http://www.twitter.com███████

YouTube: http://www.YouTube.com█████████




--
**JP MARONEY**
Founder & CEO
Harbor City Capital

Email:███████████

Toll Free:███████████
Intl: +███████████

Fax:██████████

Corp: http://www.HarborCity.com


Connect With JP...
Book Appointment: http://www.MeetWithJP.com

LinkedIN: http://www.linkedin.com/in███████
Facebook: http://www.facebook.com████████

Twitter: http://www.twitter.com█████████

YouTube: http://www.YouTube.com/████████



--

**JP MARONEY**
Founder & CEO
Harbor City Capital

Email: █████████████
Toll Free: ████████████████
Intl: +████████████
Fax: ████████████
Corp: http://www.HarborCity.com

Connect With JP...
Book Appointment: http://www.MeetWithJP.com
LinkedIN: http://www.linkedin.com/in████████
Facebook: http://www.facebook.com████████
Twitter: http://www.twitter.com/███████
YouTube: http://www.YouTube.com/████████

--
**JP MARONEY**
Founder & CEO
Harbor City Capital

Email: █████████████
Toll Free: ████████████████
Intl: ████████████
Fax: ██████
Corp: http://www.HarborCity.com

Connect With JP...
Book Appointment: http://www.MeetWithJP.com
LinkedIN: http://www.linkedin.com/in████████
Facebook: http://www.facebook.com/████
Twitter: http://www.twitter.com/███████
YouTube: http://www.YouTube.com/█████████

**FIRST AMERICAN**

TORRANCE US: OFFICE:   21250 Hawthorne Blvd.   Suite 500   Torrance, CA  90503
Tel: +1 310 657 4437   Fax: +1 310 657 4426   e-mail: admin@1stamfi.com

KINGSTON, SVG OFFICE: Financial Services Center   Stoney Ground, Kingstown   St. Vincent & The Grenadines
Tel: +1 784 456 2482   Fax: +1 784 456 2483   e-mail: rep@1stamfi.com

**EXHIBIT**

**Comp. B**

## RIDER

This RIDER dated December 4, 2019 by and between FIRST AMERICAN FINANCIAL, INCORPORATED (SVG), (hereinafter referred to as FIRST AMERICAN), and HARBOR CITY CAPITAL CORP. (hereinafter referred to as CLIENT  ), shall supersede, amend, and alter that certain AGREEMENT dated November 25, 2019 by and between the parties to said AGREEMENT, as shall follow, and shall become an integral part of said AGREEMENT.  Any provision of said AGREEMENT not specifically addressed herein shall not be affected by this RIDER and shall remain in full force and effect as provided for in the original AGREEMENT referred to above.

Now therefore, the parties do hereby agree to the following terms, conditions, understandings, and clarifications of the attached AGREEMENT as follows:

CLIENT  requests that the effective date of the Stand By Letter of Credit to be issued shall reflect a total term of THREE HUNDRED AND NINETY SIX (396) DAYS.  The AGREEMENT as referenced herein shall be amended as follows:

Paragraph 2 shall be amended to read:

2.) CLIENT  agrees to deliver to FIRST AMERICAN upon execution of this Agreement certified funds in the amount of: ***TWO HUNDRED FIFTY SEVEN THOUSAND FIVE HUNDRED AND NO/100***DOLLARS ($***257,500.00***USD) as and for the issuance of documents and/or instruments as noted in the preceding recitals of page 1, the specifics of Paragraphs #4, #5 and #6 following, and in accordance with the terms and conditions of this Agreement.  Such fees shall be delivered and credited as follows:

a.)***TWO HUNDRED FIFTY FOUR THOUSAND FIVE HUNDRED AND NO/100**DOLLARS***USD ($***254,500.00***USD) as and for the issuance of documents and instruments as more fully described in Paragraphs #4, #5 and #6 following.

b.) ***THREE THOUSAND AND NO/100***DOLLARS ($***3,000.00***) as and for document generation and registration (SBLC).

Paragraph 5 shall be amended to read:

5.) "Such certificate(s) as noted in Paragraph #4 above, shall  be  the  asset  basis  for the issuance of a STAND BY LETTER OF CREDIT (SBLC) with face value of ***FIVE MILLION AND N0/100***DOLLARS ($***5,000,000.00 ***) issued in favor of
HARBOR CITY CAPITAL CORP.  as HOLDER.  It is further understood and agreed that this Agreement provides for a term/period  of THREE HUNDRED NINETY SIX (396) DAYS in reference to the above noted documents and instruments to be provided. Should the CLIENT   choose to extend this agreement and term of documents and instruments for incremental terms of THREE HUNDRED NINETY SIX (396) DAYS, such extension(s) shall be granted at the rate of ***TWO HUNDRED FIFTY FOUR THOUSAND FIVE HUNDRED AND NO/100**DOLLARS***USD ($***254,500.00***USD) per year.  Such extensions may continue at the discretion of the CLIENT   for a period not to exceed TWO (2) YEARS, at which time FIRST AMERICAN shall have the right to review the agreement documents, and instruments in effect..."

Paragraph 10 shall be amended to read:

10.) The Date of Issue and the Date of Expiry as stated in the SBLC issued shall govern the term of the Instrument(s) to be issued. The expiry date of any SBLC and/or Certificate of Deposit(s) issued shall be THREE HUNDRED NINETY SIX (396) DAYS from the date of issuance of such document(s).



**FIRST**
**AMERICAN**

The Agreement is amended to include the following provisions and conditions:

The Date of issue of credit of the Stand By Letter to be issued shall be December 5, 2019.  The Date of expiry shall be December 31, 2020.  These dates shall be predicated upon the CLIENT's fees being remitted on or before December 5, 2019.  Should such remittance be delayed, the Stand By Letter of Credit shall be issued with a Date of issue of credit as of the date of receipt of fees, and will reflect a Date of expiry THREE HUNDRED NINETY SIX DAYS from the date of such issuance.

This RIDER contains the changes, amendments, and terms to the original AGREEMENT dated November 25, 2019 between FIRST AMERICAN and CLIENT, and supersedes any and all other documents or verbal agreements pertaining to the matters set forth in that original AGREEMENT and RIDER noted above.  All other terms and conditions of the AGREEMENT dated November 25, 2019 to which this RIDER shall become an integral part, shall remain in full force and effect as stated therein.

We have read the enclosed RIDER and agree to its mandates, terms, conditions, and covenants contained herein.  Our acceptance is evidenced by our execution of this document, below.

CLIENT: HARBOR CITY CAPITAL CORP.

By: _____
        J.P. Maroney,  CEO

Dated: _____

FIRST AMERICAN FINANCIAL, INC

By: _____
        Steven Jones, SRVP

Dated: _t 2 /4 /19_____

Page 2 of 2



# FIRST AMERICAN

## AGREEMENT FOR SERVICE

This Agreement, dated November 25, 2019 by and between FIRST AMERICAN FINANCIAL, INCORPORATED (SVG), (hereinafter referred to as FIRST AMERICAN), and HARBOR CITY CAPITAL CORP. (hereinafter referred to as Client), shall bind the parties hereto, as provided by the mandates, terms, conditions, and covenants contained herein.

Whereas FIRST AMERICAN offers financial restructuring programs whereby it can prepare and provide documents and instruments which may increase the viability of selected undertakings and projects requiring additional financial strength, and;

Whereas Client wishes to engage the services of FIRST AMERICAN in order to avail itself of the restructuring program offered by FIRST AMERICAN to more fully qualify for the undertaking or project at hand, and;

Whereas FIRST AMERICAN is advised by and believes the assurances of Client that documents and instruments provided by FIRST AMERICAN will be used to strengthen a financial position that might otherwise be considered viable on its own merits, by a third-party lender, insurer, guarantor, or investor;

Now therefore, the parties do hereby agree to the following terms, conditions, and understandings of this Agreement as follows:

1.  Client requests that FIRST AMERICAN assist in restructuring its asset position, in the amount of:
    ***FIVE MILLION AND NO/100***DOLLARS USD. ($***5,000,000.00***USD).

2.  Client agrees to deliver to FIRST AMERICAN upon execution of this Agreement certified funds in the amount of: ***TWO HUNDRED FORTY THOUSAND AND NO/100***DOLLARS ($***240,000.00***USD) as and for the issuance of documents and/or instruments as noted in the preceding recitals of page 1, the specifics of Paragraphs #4, #5 and #6 following, and in accordance with the terms and conditions of this Agreement. Such fees shall be delivered and credited as follows:

    a.)***TWO HUNDRED THIRTY SEVEN THOUSAND AND NO/100**DOLLARS***USD ($***237,000.00***USD) as and for the issuance of documents and instruments as more fully described in Paragraphs #4, #5 and #6 following.

    b.) ***THREE THOUSAND AND NO/100***DOLLARS ($***3,000.00***) as and for document generation and registration (SBLC).

3.  Upon deposit of documentation, instruments, and fees by Client, as required by FIRST AMERICAN, per paragraph #1 and #2, above, FIRST AMERICAN will deliver to Client, its agent, escrow, broker, or assigns the documents and/or instruments requested by Client, and more fully described in Paragraphs #4, #5, and #6, following. Such delivery shall occur within twenty four (24,) business hours of Client's delivery of documents, instruments, and fees as described in this paragraph above, and Paragraph #2, above, to FIRST AMERICAN or its agent. Client agrees and assures FIRST AMERICAN that all documents, submitted to FIRST AMERICAN shall be true and correct. Fees paid and/or to be paid in accordance with the terms and conditions of this Agreement shall be deemed earned and nonrefundable upon issuance of the documents and instruments noted in Paragraphs #4, #5, #6, following. The terms, and conditions contained in this Agreement shall be deemed performed and the Agreement fulfilled upon delivery of the documents and instruments as described in this Paragraph, and in Paragraphs #4, #5, and #6 following.

4.  It is understood and agreed that the documents and instruments to be provided by FIRST AMERICAN and requested by Client shall be in the following form:

CERTIFICATE(S) OF DEPOSIT IN AN AGGREGATE VALUE OF:
***FIVE MILLION AND NO/100***DOLLARS USD
($***5,000,000.00***USD).

(CONTINUED)

//

Page 1 of 4



**FIRST AMERICAN**

5.   Such certificate(s) as noted in Paragraph #4 above, shall be the asset basis for the issuance of a STAND BY LETTER OF CREDIT (SBLC) with face value of ***FIVE MILLION AND NO/100***DOLLARS ($***5,000,000.00 ***) issued in favor of HARBOR CITY CAPITAL CORP. as HOLDER. It is further understood and agreed that this Agreement provides for a term/period of THREE HUNDRED SIXTY SIX (366) DAYS in reference to the above noted documents and instruments to be provided. Should the client choose to extend this agreement and term of documents and instruments for incremental terms of THREE HUNDRED SIXTY SIX (366) DAYS, such extension(s) shall be granted at the rate of ***TWO HUNDRED THIRTY SEVEN THOUSAND AND NO/100**DOLLARS***USD ($***237,000.00***USD) per year. Such extensions may continue at the discretion of the client for a period not to exceed TWO (2) YEARS, at which time FIRST AMERICAN shall have the right to review the agreement documents, and instruments in effect.   It is further understood and agreed that the SBLC issued by FIRST AMERICAN is intended to strengthen the financial position of Client, and Client understands that the documents and instruments are issued as standby documents and FIRST AMERICAN is not expected to disburse funds against said SBLC. Should any disbursements result from Client's undertaking as it pertains to FIRST AMERICAN and any third party, such disbursement shall be transacted in kind as with this Agreement, documents, instruments, and SBLC.

6.   Client understands and agrees that the SBLC's requested must be fully funded prior to issuance of such SBLC. Client hereby requests that FIRST AMERICAN extend credit to Client in an amount sufficient to support the SBLC as stated in Paragraphs #5 and #6 above, and to fund such value into the Certificate(s) of Deposit noted in Paragraph #4 above. It is understood and agreed that the rate of interest and term of the extension of credit extended to Client by FIRST AMERICAN shall be equal to the rate of interest and term of the Certificates of Deposit issued in support of the SBLC requested by Client.

7.   It is further understood and agreed that upon maturity of the Certificates of Deposit or cancellation of this Agreement, said certificates shall be credited to the Client's outstanding extension of credit, both principal and accrued interest, and such extension of credit shall be retired. Should the SBLC issued to Client be returned to FIRST AMERICAN, without draw, no interest shall be payable by Client to FIRST AMERICAN. Any draw against the SBLC shall be charged to the Client at the rate of FIVE AND ONE QUARTER PERCENT (5.25%) per annum, with monthly reductions by Client beginning TEN (10) days from the date of such draw. Such reductions shall be no less than one hundred percent (100%) of the total draw balance owed by Client plus accrued interest. Any deferred fees owed to FIRST AMERICAN by Client shall become due and payable upon maturity of Client's Certificates of Deposit and/or termination of Client's SBLC and account. Any unpaid, unauthorized or other draw to the SBLC which does not adhere to the mandates, terms, conditions and covenants of this Agreement may be eliminated by the application of note/asset value to the SBLC in lieu of offset to the Certificates of Deposit, at the option of FIRST AMERICAN. Any differential between note and certificate offset will be waived by FIRST AMERICAN.

8.   Nothing herein contained, written or verbal, whether in the past, present, or future in regards to this transaction, shall constitute a partnership, employment, joint venture, or fiduciary relationship between the parties. Except as otherwise expressly provided herein, Client is performing its obligations hereunder as an independent contractor, company, and/or individual. Client shall be deemed liable for any misrepresentation, act or negligence of any agent, broker, associate or other entity that is or will be acting as such on the behalf of the Client.

9.   It is understood that during the Term of this Agreement, FIRST AMERICAN may be exposed to documents, information and materials which are confidential and proprietary to Client ("Confidential Information"). All Confidential information, whether written, verbal, electronic, tangible or intangible, made available, disclosed or otherwise made known to FIRST AMERICAN under this Agreement shall be considered strictly confidential, and shall be considered the sole property of Client. FIRST AMERICAN will not reveal, publish or otherwise disclose any such Confidential Information to any third party without the prior written consent of Client. The duty of confidentiality in this section shall not apply to disclosure of Confidential Information: (a) which FIRST AMERICAN can demonstrate from written records was previously known to it; (b) which is publicly available other than by breach of this Agreement by Service Provider; (c) which is lawfully disclosed to the FIRST AMERICAN on a non-confidential basis by a third party who is not obligated to the Client or any other party to retain such information in confidence. Any action for enforcement of any provision of this Agreement or any claim arising out of the relationship of the Parties may only be brought in Los Angeles County, California.

Page 2 of 4



**FIRST AMERICAN**

10. The Date of Issue and the Date of Expiry as stated in the SBLC issued shall govern the term of the instrument(s) to be issued. The expiry date of any SBLC and/or Certificate of Deposit(s) issued shall be THREE HUNDRED SIXTY SIX (366) DAYS from the date of issuance of such document(s).

11. All notices to be given by either party hereunder shall be in writing and shall be delivered by hand, overnight delivery, or by United States certified mail, postage prepaid, to the address of each party

12. FIRST AMERICAN may terminate this agreement under the following terms:

    a. In the event of attempted circumvention by Client and/or Client's associate(s), agent(s), broker(s), or any other entity or entities

    b. Any sign of illegal activity by Client and/or Client's associate(s), agent(s), broker(s), or any other entity or entities

    c. Any misrepresentation of the contractual arrangement between FIRST AMERICAN, and/or the Beneficiary(ies) and Client

    d. Any identity misrepresentation

13. Any person or entity authorized to verify any document or instrument issued by FIRST AMERICAN must do so via e-mail, fax, or U.S. Postal Service.  No telephonic verification will be accepted by FIRST AMERICAN.  Any and all requests for verification must contain the proper information and be accompanied with the Client's written authorization, allowing for such verification. Only those inquiries submitted with Client's written authorization or those with authorization on file with FIRST AMERICAN, will be verified. FIRST AMERICAN will not release information regarding account status or account holder without the proper written authorization as noted above.  FIRST AMERICAN will not participate in discussions, meetings or conference calls such as "Project Discussions", "Trade Discussions", "Joint Venture Discussions", "Discussions with Lenders", "Planning Meetings" or other such project undertakings of Client.  Client acknowledges that FIRST AMERICAN will not participate in discussions with Client's joint venture party, partners, prospective partners, traders, or financial backers as it is not the responsibility of FIRST AMERICAN to do so.  Client acknowledges that FIRST AMERICAN will not discuss verbally, or in writing, anything other than verifying the existence of the SBLC to the verifying party.  The Client expressly acknowledges that it has read and understood the terms and conditions contained in this paragraph.

14. Client insures that all pertinent disclosures have been made to First American as well as to any third-party lender, insurer, guarantor, investor, broker, and/or agent of such Parties, regarding the project, undertaking, and financing. Such disclosure should include that the documents and/or instruments provided by First American have been provided for a fee. Client further insures that all such pertinent disclosures should be made to any future third-party lender, insurer, guarantor, investor, broker, and/or agent of such Parties that may become involved in the project or undertaking in the future.

15. Client is advised and acknowledges that the documents and instruments supporting the SBLC provided by First American may not be pledged as collateral, negotiated, assigned, or hypothecated in any way, by Client. Such documents and instruments (Certificate[s] of Deposit as noted herein) must remain free and clear to support the SBLC (as noted herein) when issued. Client further acknowledges and understands that the documents and instruments supporting the SBLC provided to Client by First American are intended to be used as the basis for issuance of the SBLC requested by Client, as required in the amended, International Chamber of Commerce publication No. 590 (ISP98) and the Uniform Customs Practice for Documentary Credits, 1993 revision, ICC Publication No. 600.

16. Client acknowledges that First American is not and will not be a party to the project or undertaking as principal or other interested party. Client is aware and acknowledges that First American will not be involved in obtaining Client's loan or other financial consideration other than the issuance of the documents and instruments requested by Client, and does not guaranty that a loan or other consideration will be granted to Client, based on the restructuring provided by First American. It is agreed between the Parties hereto that documents, instruments and/or restructuring provided by First American is offered to Client, to strengthen a financial position that might otherwise be considered viable on its own merits by a third-party lender, insurer, guarantor, investor, or other interested party.

(CONTINUED)



**FIRST AMERICAN**

17.   Payment for the service of First American will not be contingent on the success of any third-party undertaking being attempted (e.g., real estate, lending, leveraged line of credit, public/private trade, investment, etc.) The documents and instruments provided by First American shall not be used for unlawful transactions.

18.   The covenants and conditions contained in this Agreement shall apply to and bind the Parties but not the heirs, legal representatives, or successors of the Parties.

19.   Any action for enforcement of any provision of this Agreement or any claim arising out of the relationship of the Parties may only be brought in Los Angeles County, California, United States, and any such action shall be governed by the laws therein. The invalidity or unenforceability of any provision of the Agreement shall not affect the validity or enforceability of any other provision.

20.   The mandates, terms, conditions, covenants and information contained herein do not constitute an offer to sell securities or a solicitation of an offer to buy securities within the United States of America, or any other jurisdiction. Securities may not be sold in the United States of America absent registration or an exemption from registration under the Securities Act. Moreover, First American does not offer negotiable or transferrable instruments or any instrument or document regulated by the Securities and Exchange Commission. None of the information contained in this Agreement is a recommendation for investment in or use of any instruments, documents, or securities.

21.   For good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged by all Parties, and their respective agents, assigns, employees, customers, representatives, and any and all other persons, firms and whatsoever does hereby indemnify, release, acquit, hold harmless, and forever discharge any Service Provider, its successors, agents, assigns, employees, representatives, and any and all other persons and firms whatsoever, from any and all claims, demands, damages, actions, causes of action, or suits of any kind or nature whatsoever, both known and unknown, specifically including but not limited to this agreement or the use or misuse of the products obtained as a result of this agreement, failure of the Depositors to provide said services, or failure of  First American to meet requirements of the Client's intended use.

22.   The terms of this Release are contractual and are not a mere recital. Should it develop that there are any errors, mistakes or any omissions in this Agreement, whether legal or factual and whether mutual or unilateral, which would cause the release of the Parties herein released to be defective or less than complete, then the Client will sign any and all documents and do any and all things necessary to effectuate a full, final and absolute release of said Parties and all others having any liability in the premises. This provision survives termination of this Agreement.

23.   This Agreement contains the total understanding between FIRST AMERICAN and Client, and supersedes any and all other documents or verbal agreements pertaining to the matters set forth in this Agreement. There are no additional understandings, agreements or promises made or implied other than those specifically stated herein.  Any specific issues not stated herein are neither implied nor a part of this Agreement.   Any changes or additions to this Agreement must be made in writing, executed by both parties to this Agreement, and attached hereto as a Rider. No party associated with the Client whether they are friend, associate, investor, financial backer, joint venture partner, co-owner, family member, agent, advisor, mentor, or anyone other than the Client who signed below, shall have any rights or claims to this agreement and therefore shall not be addressed by FIRST AMERICAN as the SBLC Provider.  No claimed ambiguity in this agreement shall be construed against any party claimed to have drafted or proposed the language in question.  It is further agreed that this Agreement shall become an integral part of any escrow between the parties as pertains to the collection of fees due FIRST AMERICAN and the delivery of documents and instruments to Client.

I/we have read the preceding Agreement and agree to its mandates, terms, conditions, and covenants contained herein.  My/our acceptance is evidenced by my/our execution of this document below.

Client: HARBOR CITY CAPITAL CORP.

By: _____

J.P. Maroney, CEO

Dated: 11/26/19

FIRST AMERICAN FINANCIAL, INCORPORATED

By: _____

Steven Jones, SVP

Dated: 11/25/19

Page 4 of 4

 **FIRST AMERICAN**

## PROMISSORY NOTE
### (Certificates of Deposit)

$5,000,000.00                     Los Angeles, California                     November 25, 2019

THREE HUNDRED SIXTY SIX (366) DAYS after date, for value received, the undersigned HARBOR CITY CAPITAL CORP. promises to pay to FIRST AMERICAN FINANCIAL, INCORPORATED (SVG) or order, the sum of:
***FIVE MILLION AND NO/100***DOLLARS USD ($***5,000,000.00***USD) with interest from November 25, 2019   on the unpaid principal, at the rate of 3.25% per annum, payable in arrears, with interest and principal due in full on November 26, 2020.  Should interest not be paid when due, it shall thereafter bear like interest, as the principal.  Should default be made in payment of interest when due, the whole sum of principal and accrued interest shall become immediately due, without notice, at the option of the holder of this note.  Holder reserves the right to offset against any assets of the maker, held by FIRST AMERICAN FINANCIAL, INCORPORATED (SVG) in the event of such default.  Offset shall be directed first to any certificate accounts held by the undersigned with FIRST AMERICAN FINANCIAL, INCORPORATED (SVG).  This note may be extended per the terms and conditions as stated in that certain Agreement for Service, dated November 25, 2019   by and between HARBOR CITY CAPITAL CORP. and FIRST AMERICAN FINANCIAL, INCORPORATED.

This note shall be in full force and affect concurrent with the issuance of Certificates of Deposit in the face value of $5,000,000.00  earning interest at the rate of 3.25% per annum.  Lacking such issuance, this note shall be null and void.

Client: HARBOR CITY CAPITAL CORP.

By:

J.R. Maroney, CEO

Date: 11/26/19



**FIRST AMERICAN**

# PROMISSORY NOTE
## (SBLC)

$5,000,000.00                         Los Angeles, California                         November 25, 2019

TEN (10) days after any call against that certain Stand By Letter of Credit dated November 25, 2019, in favor of HARBOR CITY CAPITAL CORP.  as Holder, with a face value of:
***FIVE MILLION AND NO/100***DOLLARS USD ($***5,000,000.00***USD) , and for such value received, the undersigned HARBOR CITY CAPITAL CORP.  promises to pay to FIRST AMERICAN FINANCIAL, INCORPORATED (SVG) or order, any and all such draws to date, both principal and interest, at the rate of  FIVE AND ONE QUARTER PERCENT (5.25%) per annum.

Should principal and/or interest not be paid when due, such interest shall thereafter bear like principal, and shall accrue interest as the principal.  Should default be made in payment of principal and interest when due, the whole sum of principal and accrued interest shall become immediately due, without notice, at the option of the holder of this note.

This note may be extended per the terms and conditions as stated in that certain Agreement for Service, dated November 25, 2019  by and between HARBOR CITY CAPITAL CORP. and FIRST AMERICAN FINANCIAL, INCORPORATED.

This note shall be in full force and affect concurrent with the execution and issuance of a Stand By Letter of Credit by FIRST AMERICAN FINANCIAL, INCORPORATED, in the face value of ***FIVE MILLION AND NO/100***DOLLARS USD ($***5,000,000.00***USD).  Lacking issuance of the Stand By Letter of Credit as noted above, this note shall be null and void without charge of principal or interest.

Client: HARBOR CITY CAPITAL CORP.

By: _____

J.P. Maroney,  CEO

Date: _____



**FIRST AMERICAN**

| LONDON OFFICE | CORPORATE OFFICE | PACIFIC CENTER OFFICE |
|---|---|---|
| 3 The Fountain Center. | Financial Services Center | 21250 Hawthorne Blvd. |
| Lensbury Avenue  Imperial Wharf | Stoney Ground,  Kingstown | Suite 500 |
| London SW6 2TW   United Kingdom | St. Vincent & The Grenadines | Torrance, CA 90503 |
| Tel: +44 20 7731 9864 | Tel:  +1 784 456 2482 | Tel:  (310)657-4437 |
| Fax: +44 20 7731 1744 | Fax: +1 784 456 2483 | Fax: (310)657-4426 |
| e-mail: accounts@1stamfi.com | e-mail: rep@1stamfi.com | e-mail: admin@1stamfi.com |

## WIRING INSTRUCTIONS

**Please wire funds to the FIRST AMERICAN FINANCIAL INC., Transfer Agent, as follows:**

| | |
|---|---|
| Transfer Agent: | **PACIFIC CAPITAL ACCOUNTING SERVICES, LTD** |
| Routing#: | ███627 |
| Account#: | ███3110 |
| Bank: | **Chase Bank** |
| | **Rolling Hills Estates** |
| | **27319 Hawthorne Blvd** |
| | **Rolling Hills, CA 90274** |

**EXHIBIT**

**Comp. C**

| | |
|---|---|
| **From:** | admin@ █████ |
| **To:** | paul@ █████ |
| **Subject:** | HARBOR CITY CAPITAL CORP. |
| **Date:** | Tuesday, December 17, 2019 10:44:56 PM |
| **Attachments:** | NOTICE OF CANCELLATION PENDING.pdf |
| | untitled.dat |

Mr. Nater;

Attached please find our notice of cancellation.

Best Regards
S. Jones
SVP
Financial Services

 **FIRST AMERICAN**



# FIRST
# AMERICAN

**TORRANCE US: OFFICE:** 21250 Hawthome Blvd.   Suite 500   Torrance, CA  90503
Tel: +1 310 657 4437   Fax: +1 310 657 4426   e-mail: admin@1stamfi.com
**KINGSTON, SVG OFFICE:** Financial Services Center   Stoney Ground, Kingstown   St. Vincent & The Grenadines
Tel: +1 784 456 2482   Fax: +1 784 456 2483   e-mail: rep@1stamfi.com

December 18, 2019

Nater Assiclates, Inc.
paul@█████████████

Ref:  Harbor City Capital Corp.

Mr. Nater,

Please be advised that the above referenced client transaction will be cancelled at the close of business this date, due to a failure to perform by your client.  Please advise your client accordingly.

Best Regards

S. Jones
SVP
Financial Services

**EXHIBIT**

**D**

| | |
|---|---|
| **From:** | paul@▮▮▮▮▮▮ |
| **To:** | JP Maroney |
| **Subject:** | FW: HARBOR CITY CAPITAL CORP. |
| **Date:** | Wednesday, December 18, 2019 11:38:19 AM |
| **Attachments:** | NOTICE_OF_CANCELLATION_PENDING.pdf |
| | 1C19A82A7BF44DF598308701444B9E2E.png |

JP,

Your transaction has been cancelled. I will notify any other parties involved of same.

**Regards,**

*Paul Nater*

## Nater Associates Inc.

▮▮▮▮▮▮▮
**Woodland Hills, CA 91364**

▮▮▮▮▮▮▮▮ **Email**
www.naterassociatesinc.com **Website**
**818-600-8643 Office / Cellular**

***DISCLAIMER:***
Receipt of these documents is acknowledgment and acceptance that this is privileged, proprietary and confidential and will not be
forwarded to any party(s) without prior written consent from the sender.. Upon receipt of any such documents you, as the Recipient,
hereby acknowledge this Warning and Disclaimer. These Confidential communications are protected under Gramm-Leach-Bailey Act 15
USC, Sub chapter 1, sections 6801-6809 and other laws addressing the disclosure of Non-Public Personal Information. Any misuse of
this material will result in prosecution to the fullest extent of the law. Note: This communication and any documents, or files, attached to
it, constitute an electronic communication within the scope of the Electronic Communication Privacy Act, 18 USCA 2510. This
communication may contain confidential, or privileged information intended for the sole use of the designated recipients(s). The unlawful
interception, use, or disclosure of such information is strictly prohibited under 18 USCA 2511 and any applicable laws.

**From: admin**▮▮▮▮▮▮
**Sent:** Tuesday, December 18, 2019 8:44 AM
**To:** paul@▮▮▮▮▮▮▮▮
**Subject:** HARBOR CITY CAPITAL CORP.

Mr. Nater;

Attached please find our notice of cancellation.

Best Regards
S. Jones
SVP
Financial Services

