**EXHIBIT 28**



**EXHIBIT**

**28**



**MIAMI**
**REGIONAL OFFICE**

**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
801 BRICKELL AVENUE, SUITE 1950
MIAMI, FLORIDA 33131

**DIVISION OF ENFORCEMENT**

Brian Theophilus James
Senior Counsel
(305) 982-6335
JamesB@sec.gov

March 1, 2021

<u>Via Electronic Mail and UPS</u>
jp@harborcity.com

Harbor City Capital Corp.
100 Rialto Place
Suite 700
Melbourne, FL 32901

Re: <u>Harbor City Capital Corp., (FL-04236)</u>

Dear Sir or Madam:

The enclosed subpoena has been issued pursuant to a formal order entered by the United States Securities and Exchange Commission. Pursuant to Rule 8 of the United States Securities and Exchange Commission's Rules Relating to Investigations, 17 C.F.R. § 203.8, I have enclosed a subpoena for documents issued to Harbor City Capital Corp ("Harbor City"), in connection with the above-referenced investigation.

The enclosed subpoena requires you to produce documents to the SEC **by March 10, 2021 at 10:00 AM Eastern** to:

ENF-CPU
U.S. Securities and Exchange Commission
6315 Bren Mar Drive, Suite 175
Alexandria, VA 22312

For smaller electronic productions under 10MB in size, the materials may be emailed to the following email address: ENF-CPU@sec.gov.

Please also provide a duplicate copy of any document production cover letters to me at jamesb@sec.gov. Additionally, please include the SEC matter number and the name of the requesting attorney when responding.

Please carefully read the subpoena attachment, which contains, among other things, important instructions related to the manner of producing documents. In particular, if you prefer to send us copies of original documents, **the staff requests that you scan and produce hard copy documents, as well as electronic documents, in an electronic format consistent with the SEC Data Delivery Standards attached hereto. All electronic documents responsive to the subpoena, including all metadata, should also be produced in their native software format.** If you have any questions concerning the production of documents

in an electronic format, please contact me as soon as possible and in any event before producing documents. For security reasons, we strongly encourage the encryption of sensitive documents before production.

In your cover letter(s) accompanying the production of responsive documents, please enclose a list briefly describing each item you send. The list should identify the paragraph(s) in the subpoena attachment to which each item responds. Please also state in the cover letter(s) whether you believe you have met the obligations of the subpoena by searching carefully and thoroughly for everything called for by the subpoena, and sending it all to us.

A copy of the subpoena should be included with the documents that are produced. Correspondence should reference case number, case name and requesting SEC staff member.

Passwords for documents, files, compressed archives, and encrypted media should be provided separately either via email addressed to ENF-CPU@sec.gov, or in a separate cover letter mailed separately from the data. Password correspondence should reference case number, case name and requesting SEC staff member.

In addition, for any documents that qualify as records of regularly conducted activities under Federal Rule of Evidence 902(11)[, such as those called for by Request(s) No(s). __, __ and ___], please complete a business records certification (a sample of which is enclosed) and return it with the document production. Execution of this certification may allow the Commission to introduce the documents provided by you in any subsequent judicial proceeding, without requiring your testimony.

Please note that, in any matter in which enforcement action is ultimately deemed to be warranted, the Division of Enforcement will not recommend any settlement to the Commission unless the party wishing to settle certifies, under penalty of perjury, that all documents responsive to Commission subpoenas and formal and informal document requests in this matter have been produced.

Enclosed is a copy of the Commission's Form 1662, entitled "Supplemental Information for Persons Requested to Supply Information Voluntarily or Directed to Supply Information Pursuant to a Commission Subpoena." This form explains how we may use the information that you provide to the Commission and has other important information for you.

This investigation is a non-public, fact-finding inquiry. We are trying to determine whether there have been any violations of the federal securities laws. The investigation does not mean that we have concluded that anyone has violated the law. Also, the investigation does not mean that we have a negative opinion of any person, entity, or security.

If you have any questions or would like to discuss this matter, you may contact me at (305) 982-6335.

Sincerely,

/s Brian Theophilus James
BRIAN THEOPHILUS JAMES
Senior Counsel
Division of Enforcement

Enclosures:      Subpoena and Attachment
                 SEC Data Delivery Standards
                 SEC Form 1662
                 Business Records Certification



# SUBPOENA

# UNITED STATES OF AMERICA
## SECURITIES AND EXCHANGE COMMISSION

### Harbor City Capital Corp, FL-04236

**To:**   Harbor City Capital Corp
100 Rialto Place, Suite 700
Melbourne, FL 32901

---

☒   **YOU MUST PRODUCE** everything specified in the Attachment to this subpoena to officers of the Securities and Exchange Commission, at the place, date and time specified below:

**ENF-CPU, U.S. Securities and Exchange Commission, 6315 Bren Mar Drive, Suite 175, Alexandria, VA 22312, no later than March 10, 2021 at 10:00 am.**

---

☐   **YOU MUST TESTIFY** before officers of the Securities and Exchange Commission, at the place, date and time specified below:

---

### FEDERAL LAW REQUIRES YOU TO COMPLY WITH THIS SUBPOENA.
If you do not comply with this subpoena, the SEC may bring an action in Federal Court to enforce this subpoena.
Failure to comply with a court order enforcing this subpoena may result in the court imposing a fine, imprisonment, or both.

**By:**   /s *Brian Theophilus James*                    Date:   March 1, 2021
Brian Theophilus James, Senior Counsel
U.S. Securities and Exchange Commission
Miami Regional Office
801 Brickell Avenue, Suite 1950
Miami, FL 33131

I am an officer of the U.S. Securities and Exchange Commission authorized to issue subpoenas in this matter. The Securities and Exchange Commission has issued a formal order authorizing this investigation under Section 20(a) of the Securities Act of 1933 and Section 21(a) of the Securities Exchange Act of 1934.NOTICE TO WITNESS:.

If you claim a witness fee or mileage, submit this subpoena with the claim voucher

**SUBPOENA ATTACHMENTS**
In the Matter of Harbor City Capital Corp, FL-04236

March 1, 2021

## A.    Definitions

As used in this subpoena, the words and phrases listed below shall have the following meanings:

1.    **"Harbor City"** means the entity doing business under the name "Harbor City Capital Corp", "Harbor City Digital Ventures, Inc.", "Harbor City Ventures LLC", "Harbor City Associates, LLC", "HCCF-1 LLC", "HCCF-2 LCC", "HCCF-3 LCC", "HCCF-4 LLC", "HCCF-5 LLC" including their parents, subsidiaries, affiliates, predecessors, successors, officers, directors, employees, agents, general partners, limited partners, partnerships and aliases, code names, or trade or business names used by any of the foregoing.

2.    **"Person"** means a natural person, firm, association, organization, partnership, business, trust, corporation, bank or any other private or public entity.

3.    A **"Representative"** of a Person means any present or former family members, officers, executives, partners, joint-venturers, directors, trustees, employees, consultants, accountants, attorneys, agents, or any other representative acting or purporting to act on behalf of the Person.

4.    **"Document"** shall include, but is not limited to, any written, printed, or typed matter including, but not limited to all drafts and copies bearing notations or marks not found in the original, letters and correspondence, interoffice communications, slips, tickets, records, worksheets, financial records, accounting documents, bookkeeping documents, memoranda, reports, manuals, telephone logs, facsimiles, messages of any type, telephone messages, text messages, voice mails, tape recordings, notices, instructions, minutes, summaries, notes of meetings, file folder markings, and any other organizational indicia, purchase orders, information recorded by photographic process, including microfilm and microfiche, computer printouts, spreadsheets, and other electronically stored information, including but not limited to writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations that are stored in any medium from which information can be retrieved, obtained, manipulated, or translated.

5.    **"Communication"** means any correspondence, contact, discussion, e-mail, instant message, or any other kind of oral or written exchange or transmission of information (in the form of facts, ideas, inquiries, or otherwise) and any response thereto between two or more Persons or entities, including, without limitation, all telephone conversations, face-to-face meetings or conversations, internal or external discussions, or exchanges of a Document or Documents.

## B.    Instructions

1.    Unless otherwise specified, this subpoena calls for production of the original Documents and all copies and drafts of same. Documents responsive to this subpoena may be in electronic or paper form. Electronic Documents such as email should be produced in accordance with the attached Document entitled SEC Data Delivery Standards. All responsive electronic Documents, including all metadata, should also be produced in their native software format.

2.     For Documents in paper format, you may send the originals, or, if you prefer, you may send copies of the originals. The Commission cannot reimburse you for the copying costs. If you are sending copies, the staff requests that you scan (rather than photocopy) hard copy Documents and produce them in an electronic format consistent with the SEC Data Delivery Standards. Alternatively, you may send us photocopies of the Documents in paper format. If you choose to send copies, you <u>must</u> secure and retain the originals and store them in a safe place. The staff may later request or require that you produce the originals.

3.     Whether you scan or photocopy Documents, the copies must be identical to the originals, including even faint marks or print. Also, please note that if copies of a Document differ in any way, they are considered separate Documents and you must send each one. For example, if you have two copies of the same letter, but only one of them has handwritten notes on it, you must send both the clean copy and the one with notes.

4.     In producing a photocopy of an original Document that contains post-it(s), notation flag(s), or other removable markings or attachments which may conceal all or a portion of the markings contained in the original Document, photocopies of the original Document both with and without the relevant post-it(s), notation flag(s), or removable markings or attachments should be produced.

5.     Documents should be produced as they are kept in the ordinary course of business or be organized and labeled to correspond with the categories in this request. In that regard, Documents should be produced in a unitized manner, i.e., delineated with staples or paper clips to identify the Document boundaries.

6.     Documents should be labeled with sequential numbering (bates-stamped).

7.     You must produce all Documents created during, or Concerning, the time periods identified in this subpoena, unless otherwise specified.

8.     The scope of any given request should not be limited or narrowed based on the fact that it calls for Documents that are responsive to another request.

9.     You are not required to produce exact duplicates of any Documents that have been previously produced to the Securities and Exchange Commission staff in connection with this matter. If you are not producing Documents based upon a prior production, please identify the responsive Documents that were previously produced.

10.    For any Documents that qualify as records of regularly conducted activities under Federal Rule of Evidence 902(11), please complete a business records certification (a sample of which is enclosed) and return it with the Document production.

11.    This subpoena covers all Documents in or subject to your possession, custody or control, including all Documents that are not in your immediate possession but that you have the effective ability to obtain, that are responsive, in whole or in part, to any of the individual requests set forth below. If, for any reason – including a claim of attorney-client privilege – you do not produce something called for by the request, you should submit a list of what you are not producing. The list should describe each item separately, noting:

        a.     its author(s);
        b.     its date;
        c.     its subject matter;

d.    the name of the Person who has the item now, or the last Person known to have it;

e.    the names of everyone who ever had the item or a copy of it, and the names of everyone who was told the item's contents;

f.    the basis upon which you are not producing the responsive Document;

g.    the specific request in the subpoena to which the Document relates;

h.    the attorney(s) and the client(s) involved; and

i.    in the case of the work product doctrine, the litigation for which the Document was prepared in anticipation.

12.    If Documents responsive to this subpoena no longer exist because they have been lost, discarded, or otherwise destroyed, you should identify such Documents and give the date on which they were lost, discarded or destroyed.

## C.  <u>Documents to be Produced</u>

1.    Documents sufficient to describe Harbor City's business model and organizational structure, including subsidiaries, affiliates or related entities.

2.    Documents sufficient to identify any current and former officers, employees and independent contractors, including sales agents.

3.    Documents sufficient to identify the names, addresses, telephone numbers, email addresses, and any other contact information for all individuals and/or entities that invested in Harbor City.

4.    Documents sufficient to identify the names, addresses, telephone numbers, email addresses, and any other contact information for all individuals, entities and/or sales agents that solicited potential investors on behalf of Harbor City.

5.    Any offering documents or other relevant records in your possession, custody or control, concerning Harbor City, including but not limited to, private placement memoranda, subscription materials, offering circulars, financial statements, prospectus, advertisements, marketing materials, scripts, and/or investor newsletters, promissory notes, funding agreements or other documents related to the offer and/or purchase of any investments in Harbor City.

6.    All correspondence, communication, electronic mail, memoranda, notes and other records of communications between Harbor City and any former or current sales agent.

7.    All correspondence, communications, electronic mail, memoranda, notes and other records of communications between Harbor City and any investor or prospective investor.

8.    Documents sufficient to identify all funds received by Harbor City from investors. Such documents include, but are not limited to, front and back of all cancelled checks, check stubs, wire transfer records, invoices, receipts, financial statement, ledgers, tax forms and any other documents or records reflecting receipts of any such funds.

9.    Documents sufficient to identify how Harbor City used the funds it raised from investors, including but not limited to, wire transfer records, front and back of cancelled checks, invoices, receipts, financial statement, ledgers, tax forms, and communications relating to, regarding, or reflecting the use of any such funds.

10.    Documents sufficient to identify all payments, including returns on investment, interest payments, dividends, refunds, loans, referral fees, or similar disbursement of funds to any investor in Harbor City. Such documents include but are not limited to, investor names, dates of disbursement, disbursement amounts, and reason for disbursement.

11.    Documents sufficient to identify the names, addresses, telephone numbers, email addresses, and any other contact information for all clients or customers of Harbor City.

12.    Documents sufficient to identify all revenues, sales and/or income generated by Harbor City from its business, including but not limited to, wire transfer records, front and back of cancelled checks, invoices, receipts, financial statement, ledgers, tax forms, and communications relating to, regarding, or reflecting the those funds.

https://www.campusship.ups.com/cship/create?ActionOriginPair=default___PrintWindowP...   3/2/2021

UPS CampusShip | UPS - United States





**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
801 BRICKELL AVENUE, SUITE 1950
MIAMI, FLORIDA 33131

MIAMI
REGIONAL OFFICE

DIVISION OF ENFORCEMENT

Brian Theophilus James
Senior Counsel
(305) 982-6335
JamesB@sec.gov

March 1, 2021

**Via Electronic Mail and UPS**
jp@harborcity.com

Jonathan P. Maroney
President and CEO
Harbor City Capital Corp.
100 Rialto Place
Suite 700
Melbourne, FL 32901

Re: Harbor City Capital Corp., (FL-04236)

Dear Mr. Maroney:

The enclosed subpoena has been issued pursuant to a formal order entered by the United States Securities and Exchange Commission. Pursuant to Rule 8 of the United States Securities and Exchange Commission's Rules Relating to Investigations, 17 C.F.R. § 203.8, I have enclosed a subpoena for documents and testimony issued to you, in connection with the above-referenced investigation.

**The enclosed subpoena requires you to produce documents to the SEC by March 10, 2021. Please deliver the materials by March 10, 2021 at 10:00 am to:**

ENF-CPU
U.S. Securities and Exchange Commission
6315 Bren Mar Drive, Suite 175
Alexandria, VA 22312

For smaller electronic productions under 10MB in size, the materials may be emailed to the following email address: ENF-CPU@sec.gov.

Please also provide a duplicate copy of any document production cover letters to me at jamesb@sec.gov. Additionally, please include the SEC matter number and the name of the requesting attorney when responding.

**The subpoena also requires you to appear for testimony on March 10, 2021 at 10:00 am** conducted by audio-visual teleconference means, using the WebEx Internet platform.  I will send WebEx invitations to

enable you to access the testimony session.  Please provide your preferred email address, for purposes of sending the WebEx invitations, as soon as possible.

Please carefully read the subpoena attachment, which contains, among other things, important instructions related to the manner of producing documents. In particular, if you prefer to send us copies of original documents, **the staff requests that you scan and produce hard copy documents, as well as electronic documents, in an electronic format consistent with the SEC Data Delivery Standards attached hereto. All electronic documents responsive to the subpoena, including all metadata, should also be produced in their native software format.** If you have any questions concerning the production of documents in an electronic format, please contact me as soon as possible and in any event before producing documents. For security reasons, we strongly encourage the encryption of sensitive documents before production.

In your cover letter(s) accompanying the production of responsive documents, please enclose a list briefly describing each item you send. The list should identify the paragraph(s) in the subpoena attachment to which each item responds. Please also state in the cover letter(s) whether you believe you have met the obligations of the subpoena by searching carefully and thoroughly for everything called for by the subpoena, and sending it all to us.

A copy of the subpoena should be included with the documents that are produced. Correspondence should reference case number, case name and requesting SEC staff member.

Passwords for documents, files, compressed archives, and encrypted media should be provided separately either via email addressed to ENF-CPU@sec.gov, or in a separate cover letter mailed separately from the data. Password correspondence should reference case number, case name and requesting SEC staff member.

In addition, for any documents that qualify as records of regularly conducted activities under Federal Rule of Evidence 902(11)[, such as those called for by Request(s) No(s). __, __ and ___], please complete a business records certification (a sample of which is enclosed) and return it with the document production. Execution of this certification may allow the Commission to introduce the documents provided by you in any subsequent judicial proceeding, without requiring your testimony.

A background questionnaire is also enclosed. During your testimony, the staff intends to ask background questions concerning, among other things, your residences, telephone numbers, education and employment. To expedite that part of the testimony, we request that you complete the enclosed questionnaire on a voluntary basis and provide it to the staff prior to your testimony.

Please note that, in any matter in which enforcement action is ultimately deemed to be warranted, the Division of Enforcement will not recommend any settlement to the Commission unless the party wishing to settle certifies, under penalty of perjury, that all documents responsive to Commission subpoenas and formal and informal document requests in this matter have been produced.

Enclosed is a copy of the Commission's Form 1662, entitled "Supplemental Information for Persons Requested to Supply Information Voluntarily or Directed to Supply Information Pursuant to a Commission Subpoena." This form explains how we may use the information that you provide to the Commission and has other important information for you.

This investigation is a non-public, fact-finding inquiry. We are trying to determine whether there have been any violations of the federal securities laws. The investigation does not mean that we have concluded that anyone has violated the law. Also, the investigation does not mean that we have a negative opinion of any person, entity, or security.

If you have any questions or would like to discuss this matter, you may contact me at (305) 982-6335.

Sincerely,

/s *Brian Theophilus James*

BRIAN THEOPHILUS JAMES
Senior Counsel
Division of Enforcement

Enclosures:      Subpoena and Attachment
                SEC Data Delivery Standards
                SEC Form 1662
                Background Questionnaire
                Business Records Certification



# SUBPOENA

# UNITED STATES OF AMERICA
## SECURITIES AND EXCHANGE COMMISSION

### Harbor City Capital Corp, FL-04236

**To:**  Jonathan P. Maroney
President and CEO
Harbor City Capital Corp
100 Rialto Place, Suite 700
Melbourne, FL 32901

---

☒  **YOU MUST PRODUCE** everything specified in the Attachment to this subpoena to officers of the Securities and Exchange Commission, at the place, date and time specified below:

**ENF-CPU, U.S. Securities and Exchange Commission, 6315 Bren Mar Drive, Suite 175, Alexandria, VA 22312, no later than March 10, 2021 at 10:00 am.**

---

☒  **YOU MUST TESTIFY** before officers of the Securities and Exchange Commission, at the place, date and time specified below: **March 10, 2021, at 10:00 AM Eastern, by audio-visual teleconference means, using the WebEx Internet platform.**  You are to access the testimony session through a WebEx invite, which will be sent to you.

---

### FEDERAL LAW REQUIRES YOU TO COMPLY WITH THIS SUBPOENA.
If you do not comply with this subpoena, the SEC may bring an action in Federal Court to enforce this subpoena.
Failure to comply with a court order enforcing this subpoena may result in the court imposing a fine, imprisonment, or both.

By:  */s Brian Theophilus James*                Date:   March 1, 2021
Brian Theophilus James, Senior Counsel
U.S. Securities and Exchange Commission
Miami Regional Office
801 Brickell Avenue, Suite 1950
Miami, FL 33131

I am an officer of the U.S. Securities and Exchange Commission authorized to issue subpoenas in this matter. The Securities and Exchange Commission has issued a formal order authorizing this investigation under Section 20(a) of the Securities Act of 1933 and Section 21(a) of the Securities Exchange Act of 1934.NOTICE TO WITNESS:.

If you claim a witness fee or mileage, submit this subpoena with the claim voucher

## SUBPOENA ATTACHMENTS
In the Matter of Harbor City Capital Corp, FL-04236

March 1, 2021

### A.   Definitions

As used in this subpoena, the words and phrases listed below shall have the following meanings:

1. **"Harbor City"** means the entity doing business under the name "Harbor City Capital Corp", "Harbor City Digital Ventures, Inc.", "Harbor City Ventures LLC", "Harbor City Associates, LLC", "HCCF-1 LLC", "HCCF-2 LCC", "HCCF-3 LCC", "HCCF-4 LLC", "HCCF-5 LLC" including their parents, subsidiaries, affiliates, predecessors, successors, officers, directors, employees, agents, general partners, limited partners, partnerships and aliases, code names, or trade or business names used by any of the foregoing.

2. **"Person"** means a natural person, firm, association, organization, partnership, business, trust, corporation, bank or any other private or public entity.

3. A **"Representative"** of a Person means any present or former family members, officers, executives, partners, joint-venturers, directors, trustees, employees, consultants, accountants, attorneys, agents, or any other representative acting or purporting to act on behalf of the Person.

4. **"Document"** shall include, but is not limited to, any written, printed, or typed matter including, but not limited to all drafts and copies bearing notations or marks not found in the original, letters and correspondence, interoffice communications, slips, tickets, records, worksheets, financial records, accounting documents, bookkeeping documents, memoranda, reports, manuals, telephone logs, facsimiles, messages of any type, telephone messages, text messages, voice mails, tape recordings, notices, instructions, minutes, summaries, notes of meetings, file folder markings, and any other organizational indicia, purchase orders, information recorded by photographic process, including microfilm and microfiche, computer printouts, spreadsheets, and other electronically stored information, including but not limited to writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations that are stored in any medium from which information can be retrieved, obtained, manipulated, or translated.

5. **"Communication"** means any correspondence, contact, discussion, e-mail, instant message, or any other kind of oral or written exchange or transmission of information (in the form of facts, ideas, inquiries, or otherwise) and any response thereto between two or more Persons or entities, including, without limitation, all telephone conversations, face-to-face meetings or conversations, internal or external discussions, or exchanges of a Document or Documents.

### B.   Instructions

1. Unless otherwise specified, this subpoena calls for production of the original Documents and all copies and drafts of same. Documents responsive to this subpoena may be in electronic or paper form. Electronic Documents such as email should be produced in accordance with the attached Document entitled SEC Data Delivery Standards. All responsive electronic Documents, including all metadata, should also be produced in their native software format.

2.      For Documents in paper format, you may send the originals, or, if you prefer, you may send copies of the originals. The Commission cannot reimburse you for the copying costs. If you are sending copies, the staff requests that you scan (rather than photocopy) hard copy Documents and produce them in an electronic format consistent with the SEC Data Delivery Standards. Alternatively, you may send us photocopies of the Documents in paper format. If you choose to send copies, you <u>must</u> secure and retain the originals and store them in a safe place. The staff may later request or require that you produce the originals.

3.      Whether you scan or photocopy Documents, the copies must be identical to the originals, including even faint marks or print. Also, please note that if copies of a Document differ in any way, they are considered separate Documents and you must send each one. For example, if you have two copies of the same letter, but only one of them has handwritten notes on it, you must send both the clean copy and the one with notes.

4.      In producing a photocopy of an original Document that contains post-it(s), notation flag(s), or other removable markings or attachments which may conceal all or a portion of the markings contained in the original Document, photocopies of the original Document both with and without the relevant post-it(s), notation flag(s), or removable markings or attachments should be produced.

5.      Documents should be produced as they are kept in the ordinary course of business or be organized and labeled to correspond with the categories in this request. In that regard, Documents should be produced in a unitized manner, i.e., delineated with staples or paper clips to identify the Document boundaries.

6.      Documents should be labeled with sequential numbering (bates-stamped).

7.      You must produce all Documents created during, or Concerning, the time periods identified in this subpoena, unless otherwise specified.

8.      The scope of any given request should not be limited or narrowed based on the fact that it calls for Documents that are responsive to another request.

9.      You are not required to produce exact duplicates of any Documents that have been previously produced to the Securities and Exchange Commission staff in connection with this matter. If you are not producing Documents based upon a prior production, please identify the responsive Documents that were previously produced.

10.     For any Documents that qualify as records of regularly conducted activities under Federal Rule of Evidence 902(11), please complete a business records certification (a sample of which is enclosed) and return it with the Document production.

11.     This subpoena covers all Documents in or subject to your possession, custody or control, including all Documents that are not in your immediate possession but that you have the effective ability to obtain, that are responsive, in whole or in part, to any of the individual requests set forth below. If, for any reason – including a claim of attorney-client privilege – you do not produce something called for by the request, you should submit a list of what you are not producing. The list should describe each item separately, noting:

        a.      its author(s);
        b.      its date;
        c.      its subject matter;

d.  the name of the Person who has the item now, or the last Person known to have it;

e.  the names of everyone who ever had the item or a copy of it, and the names of everyone who was told the item's contents;

f.  the basis upon which you are not producing the responsive Document;

g.  the specific request in the subpoena to which the Document relates;

h.  the attorney(s) and the client(s) involved; and

i.  in the case of the work product doctrine, the litigation for which the Document was prepared in anticipation.

12.  If Documents responsive to this subpoena no longer exist because they have been lost, discarded, or otherwise destroyed, you should identify such Documents and give the date on which they were lost, discarded or destroyed.

## C.  Documents to be Produced

1.  Documents sufficient to describe Harbor City's business model and organizational structure, including subsidiaries, affiliates or related entities.

2.  Documents sufficient to identify any current and former officers, employees and independent contractors, including sales agents.

3.  Documents sufficient to describe your relationship, role, position(s) and responsibilities associated with Harbor City.

4.  Documents sufficient to identify the names, addresses, telephone numbers, email addresses, and any other contact information for all individuals and/or entities that invested in Harbor City.

5.  Documents sufficient to identify the names, addresses, telephone numbers, email addresses, and any other contact information for all individuals, entities and/or sales agents that solicited potential investors on behalf of Harbor City.

6.  Any offering documents or other relevant records in your possession, custody or control, concerning Harbor City, including but not limited to, private placement memoranda, subscription materials, offering circulars, financial statements, prospectus, advertisements, marketing materials, scripts, and/or investor newsletters, promissory notes, funding agreements or other documents related to the offer and/or purchase of any investments in Harbor City.

7.  All correspondence, communication, electronic mail, memoranda, notes and other records of communications between you and any former or current sales agent.

8.  All correspondence, communications, electronic mail, memoranda, notes and other records of communications between you and any investor or prospective investor.

9.  Documents sufficient to identify all funds received by Harbor City from investors.  Such documents include, but are not limited to, front and back of all cancelled checks, check stubs, wire transfer records, invoices, receipts, financial statement, ledgers, tax forms and any other documents or records reflecting receipts of any such funds.

10.  Documents sufficient to identify how Harbor City used the funds it raised from investors, including but not limited to, wire transfer records, front and back of cancelled checks, invoices, receipts, financial statement, ledgers, tax forms, and communications relating to, regarding, or reflecting the use of any such funds.

11.  Documents sufficient to identify all payments, including returns on investment, interest payments, dividends, refunds, loans, referral fees, or similar disbursement of funds to any investor in Harbor City.  Such documents include but are not limited to, investor names, dates of disbursement, disbursement amounts, and reason for disbursement.

12.   Documents sufficient to identify the names, addresses, telephone numbers, email addresses, and any other contact information for all clients or customers of Harbor City.

13.   Documents sufficient to identify all revenues, sales and/or income generated by Harbor City from its business, including but not limited to, wire transfer records, front and back of cancelled checks, invoices, receipts, financial statement, ledgers, tax forms, and communications relating to, regarding, or reflecting the those funds.

https://www.campusship.ups.com/cship/create?ActionOriginPair=default___PrintWindowP...   3/2/2021

UPS CampusShip | UPS - United States



SEC-MIAMI OFFICE
3059826300
SEC- MIAMI
801 BRICKELL  AVE., SUITE 1950
MIAMI  FL 33131

**LTR**                    **1 OF 1**

**SHIP TO:**
JONATHAN P. MARONEY, PRESIDENT & CEO
HARBOR CITY CAPITAL CORP.
100 RIALTO PLACE, STE. 700
**MELBOURNE  FL 32901-3071**

**FL 329 1-04**

**UPS NEXT DAY AIR**              **1**
TRACKING #: 1Z A37 48W 01 9215 8258

BILLING: P/P

Reference #1: 66211

CS 22.0.12.   WNTNV50 42.0A 01/2021®

**EXHIBIT 29**

EXHIBIT

29



1 OF 1

LTR

SEC-MIAMI OFFICE
305-982-6300
SEC- MIAMI
801 BRICKELL AVE., SUITE 1950
MIAMI FL 33131

SHIP TO:
THE FORTUNE LAW FIRM
C/O REGISTERED AGENT
SUITE 200
11920 SOUTHERN HIGHLANDS PARKWAY
LAS VEGAS  NV  89141-3274

NV 890 9-10

UPS NEXT DAY AIR

1

TRACKING #: 1Z A37 48W 24 9322 2660

BILLING: P/P
SIGNATURE REQUIRED

Reference #1: 66211

CS 22.0.12.      WNTN/59.42.0A 01/2021*

4/15/2021                                    Tracking | UPS - United States

# Proof of Delivery

Dear Customer,

This notice serves as proof of delivery for the shipment listed below.

**Tracking Number**

1ZA3748W2493222660

**Service**

UPS Next Day Air®

**Shipped / Billed On**

03/18/2021

**Additional Information**

Signature Required

**Delivered On**

03/22/2021 10:09 A.M.

**Delivered To**

LAS VEGAS, NV, US

**Received By**

CV FORTUNE

**Left At**

Front Desk

Thank you for giving us this opportunity to serve you. Details are only available for shipments delivered within the last 120 days. Please print for your records if you require this information after 120 days.

Sincerely,

UPS

Tracking results provided by UPS: 04/15/2021 11:50 A.M. EST

**EXHIBIT 30**

EXHIBIT

30

IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CASE NO.: 6:19-cv-01379

RONALD D. SCHERZINGER,

     Plaintiff,

vs.

HARBOR CITY VENTURES, LLC, a Nevada
Limited Liability Company, and JONATHAN
PAUL MARONEY, a/k/a JP MARONEY,
Individually,

     Defendants.

_____/

## FIRST AMENDED COMPLAINT

     Plaintiff, Ronald D. Scherzinger (the "Plaintiff"), by and through the undersigned counsel,
hereby sues Defendant Harbor City Ventures, LLC ("Harbor City"), a Nevada limited liability
company, and Jonathan Paul Maroney, also known as JP Maroney ("Maroney"), in his individual
capacity (collectively, the "Defendants"), and in support, states the following:

## PARTY ALLEGATIONS

     1.     Plaintiff is an individual residing at 1900 Bainbridge Row, Louisville, Kentucky,
40207.

     2.     At all relevant times, Plaintiff is and has been a citizen of the state of Kentucky.

     3.     At all relevant times, Defendant Maroney is and has been an individual residing in
Melbourne, Florida and a citizen of Brevard County, Florida.

4.      At all relevant times, Defendant Harbor City is and has been a Nevada limited liability company with a principal place of business located at 100 Rialto Place, Suite 700, Melbourne, Florida 32901 and conducted business in Melbourne, Florida.

5.      At all times relevant hereto, the sole member of Defendant Harbor City is and was Defendant Maroney.

6.      Because the citizenship of a limited liability company depends on its members, Defendant Harbor City qualifies as a citizen of Brevard County, Florida, because its sole member, Defendant Maroney, is and has been a citizen of Brevard County, Florida, at all times relevant to the causes of action asserted in this Complaint. *See Rolling Greens MHP, L.P. v. Comcast SCH Holdings, LLC*, 374 F.3d 1020, 1022 (11th Cir. 2004).

## ALLEGATIONS AS TO JURISDICTION AND VENUE

7.      This is an action for money damages. The claim for money damages exceeds $75,000.00, exclusive of interest, costs, and attorneys' fees. This Court is vested with original jurisdiction over this matter by virtue of 28 U.S.C. §1332(a).

8.      Defendant Harbor City is subject to the personal jurisdiction of this Court because: (i) at all relevant times, Harbor City, qualified as a citizen of the state of Florida because, at all relevant times, its sole member, Defendant Maroney, was a citizen of Melbourne, Florida, which is located in Brevard County, Florida; and (ii) Harbor City irrevocably consented to the personal jurisdiction of this Court in Section 7 of the 2016 Digital Marketing Arbitrage Funding Agreement (as defined below) and the 2018 Digital Marketing Arbitrage Funding Agreement (as defined below).

9.     Defendant Maroney is subject to the personal jurisdiction of this Court because at all relevant times, Defendant was a citizen of Melbourne, Florida, which is located in Brevard County, Florida.

10.     Venue is proper pursuant to Section 7 of the 2016 Digital Marketing Arbitrage Funding Agreement (as defined below) and the 2018 Digital Marketing Arbitrage Funding Agreement (as defined below), executed by the parties, in which both Plaintiff and Harbor City agreed that the sole and exclusive venue for any action arising out of the 2016 Digital Marketing Arbitrage Funding Agreement or the 2018 Digital Marketing Arbitrage Funding Agreement shall be in the state or federal courts in and for Brevard County, Florida. This Court is the proper venue for federal cases occurring in Brevard County, Florida.

## ALLEGATIONS CONCERNING CONDITIONS PRECEDENT

11.     All conditions precedent to the bringing of this action have been performed, excused, and/or waived.

## BACKGROUND

12.     In or around March 2016, Plaintiff and Maroney began communicating about a potential investment by Plaintiff into Maroney's business, Harbor City, including (collectively, the "Communications"): (i) at least one phone call between Maroney, Harbor City, and Plaintiff that occurred on around March 18, 2016; (ii) various email communications between Maroney, Harbor City, and Plaintiff throughout the month of March 2016, both prior to and after March 28, 2016; (iii) print marketing materials, including a brochure provided to Plaintiff by Harbor City and Maroney prior to March 28, 2016.

13.     As part of the Communications, Maroney and Harbor City provided Plaintiff with brazen marketing materials used to lure unwitting investors, such as Plaintiff, to invest in Harbor

3

City, which called itself a "digital arbitrage," promising investors "double digit returns in a single digit economy," and misrepresenting itself as a "safe investment" despite such allegedly high returns.

14.     In or around early March 2016, Maroney and Harbor City represented to Plaintiff that Harbor City's business consisted of the utilization of its "client facing brand Responzive.com" as a "digital arbitrage" to yield significant returns for investors from the "high-growth +$200B Internet advertising sector," when, in actuality: (i) Responzive.com appears to have been nothing more than a shell website, which, at one point listed a non-existent physical address in San Francisco, as well as a generic contact email address (reservations@domains.com) belonging to its web-hosting company; (ii) Maroney appears to be utilizing Harbor City to employ a multi-level marketing scheme to scam investors into investing in its sham business of selling junk "leads" to small business owners, with little to no return for investors, despite written marketing materials from Harbor City promising investors the "Alternative Investment of the Decade" and "double digit returns". In actuality, besides Harbor City's deceptive and hyperbolic marketing materials, there is little to no evidence that Harbor City had any legitimate business purpose other than inducing loans which it could not repay.

15.     As a direct result of the Communications, brazen misrepresentations, and deceptive marketing techniques employed by Maroney and Harbor City throughout early March 2016, on or about March 28, 2016, Plaintiff agreed to invest in Harbor City via a loan of $100,000.00 to Harbor City, which was memorialized by that certain Digital Marketing Arbitrage Funding Agreement, dated March 21, 2016 (the "2016 Digital Marketing Arbitrage Funding Agreement"), a copy of which is attached hereto as **Exhibit A**.

16.     When Harbor City defaulted under the terms of the 2016 Digital Marketing Arbitrage Funding Agreement by failing to make any payments to Plaintiff when the loan matured, Harbor City again induced Plaintiff to enter into a new loan transaction with Harbor City, in the principal amount of $153,750.00, which is memorialized by that certain Digital Marketing Arbitrage Funding Agreement, dated May 14, 2018 (the "2018 Digital Marketing Arbitrage Funding Agreement"), a copy of which is attached hereto as **Exhibit B**.

17.     Harbor City again defaulted under the terms of the 2018 Digital Marketing Arbitrage Funding Agreement by failing to make any payments to Plaintiff when the loan matured.

### COUNT I – BREACH OF THE 2016 DIGITAL MARKETING ARBITRAGE FUNDING AGREEMENT
*(Against Harbor City)*

Plaintiff sues Defendant Harbor City for breach of the 2016 Digital Marketing Arbitrage Funding Agreement, and as grounds therefore asserts the following:

18.     Plaintiff hereby adopts and realleges paragraphs 1 through 11 and 15 through 16; as if each were fully and independently realleged herein.

19.     The opening paragraph of the 2016 Digital Marketing Arbitrage Funding Agreement states, in relevant part that:

"On or before March 28, 2017, for value received, [Defendant Harbor City] promises to pay to the order of [Plaintiff]...the principal sum of $100,000.00."

20.     On or about March 21, 2016, Plaintiff paid $100,000.00 to Defendant Harbor City by depositing a cashier's check into Harbor City's Chase bank account at Maroney's direction. A copy of the cashier's check evidencing such payment is attached hereto as **Exhibit C**.

21.     On March 28, 2017, when the loan reached maturity, Harbor City failed to repay Plaintiff the principal sum of $100,000.00 as required by the opening paragraph of the 2016 Digital

Marketing Arbitrage Funding Agreement. To date, Plaintiff has received no principal payment from Harbor City.

22.     Paragraph 2 of the 2016 Digital Marketing Arbitrage Funding Agreement states, in relevant part that:

> "Interest of 24% [or] $24,000.00 will be payable [to Plaintiff by Harbor City] in one installment at the time the principal is due."

23.     On March 28, 2017, when the loan reached maturity, Harbor City failed to repay Plaintiff the interest due as required by Paragraph 2 of the 2016 Digital Marketing Arbitrage Funding Agreement. To date, Plaintiff has received no interest payment from Harbor City.

24.     Paragraph 4 of the 2016 Digital Marketing Arbitrage Funding Agreement states, in relevant part, that Harbor City's "failure to make any payment when due…including the final payment due under this note when fully amortized" constitutes an "[e]vent of default."

25.     Harbor City's failure to pay Plaintiff the principal and interest due, as described above, constituted a default event under the terms of the 2016 Digital Marketing Arbitrage Funding Agreement, and constituted a material breach of the 2016 Digital Marketing Arbitrage Funding Agreement.

26.     Paragraph 5 of the 2016 Digital Marketing Arbitrage Funding Agreement provides for the acceleration of all amounts due thereunder in the event of a default, including principal, interests, attorneys' fees and costs.

27.     Paragraph 6 of the 2016 Digital Marketing Arbitrage Funding Agreement provides that Harbor City has waived any right to receive notice of acceleration or notice of default.

28.     Harbor City's failure to pay Plaintiff the principal and interest due at maturity triggered the acceleration clause of the 2016 Digital Marketing Arbitrage Funding Agreement.

29.     Paragraph 14 of the 2016 Digital Marketing Arbitrage Funding Agreement states, in relevant part, that, in the event a final payout is not timely requested and realized at the maturity date:

> "… [the] note shall roll over for another 12-month term, at same rate, with principal amount consisting of previous year principal and interest due (if any) combined."

30.     Although Plaintiff timely requested a final payout under the 2016 Digital Marketing Arbitrage Funding Agreement, on or around April 10, 2017, Harbor City acknowledged its default, and alleged that as a result of its default, the new principal amount due and owing to Plaintiff was $124,000.00, plus interest at the rate of 24% per year.

31.     On or about May 16, 2019, Plaintiff, by and through his counsel: (i) again notified Harbor City of its default under the terms of 2016 Digital Marketing Arbitrage Funding Agreement by failing to pay the principal and interest due on the maturity date, or any date thereafter; (ii) gave Harbor City notice that the acceleration clause in Paragraph 5 of the 2016 Digital Marketing Arbitrage Funding Agreement had been triggered as a result of the default; and (iii) demanded immediate payment of all amounts due, plus attorneys' fees and costs, as provided for in Paragraph 8 of the 2016 Digital Marketing Arbitrage Funding Agreement. A copy of the demand letter is attached hereto as **Exhibit D**.

32.     As a direct and proximate result of Harbor City's breach of the 2016 Digital Marketing Arbitrage Funding Agreement, Plaintiff has been damaged and is entitled to recover its compensatory damages, pre-judgment interest, and reimbursement of attorneys' fees and costs.

WHEREFORE, Plaintiff demands judgment against Harbor City for all of the above-described compensatory damages, pre-judgment interest, attorneys' fees and costs pursuant to Paragraph 8 of the 2016 Digital Marketing Arbitrage Funding Agreement, and such other and further relief as this Court deems appropriate.

## COUNT II – BREACH OF THE 2018 DIGITAL
## MARKETING ARBITRAGE FUNDING AGREEMENT
### *(Against Harbor City)*

Plaintiff sues Harbor City for breach of the 2018 Digital Marketing Arbitrage Funding Agreement, and as grounds therefore asserts the following:

33.     Plaintiff hereby adopts and realleges paragraphs 1 through 11 and 15 through 17, as if each were fully and independently realleged herein.

34.     The opening paragraph of the 2018 Digital Marketing Arbitrage Funding Agreement states, in relevant part that:

"On or before May 16, 2020, for value received, [Defendant Harbor City] promises to pay to the order of [Plaintiff]…the principal sum of $153,750.00."

35.     Paragraph 2 of the 2018 Digital Marketing Arbitrage Funding Agreement states, in relevant part that:

"Quarterly interest-only payments of 4.5% ($6,919) will be payable each quarter. First payment is due on or around July 15, 2018, with each subsequent payment due on or around the 15th day of the month following the close of the previous calendar year quarter."

36.     Harbor City failed to make the quarterly interest-only payment due to Plaintiff on July 15, 2018, and all subsequent interest payments that became due thereafter, as required by Paragraph 2 of the 2018 Digital Marketing Arbitrage Funding Agreement.

37.     Paragraph 4 of the 2018 Digital Marketing Arbitrage Funding Agreement states, in relevant part, that Harbor City's "failure to make any payment when due" constitutes an "[e]vent of default."

38.     Harbor City's failure to pay Plaintiff any of the quarterly interest-only payments when they became due constituted a default and a material breach of the terms of 2018 Digital Marketing Arbitrage Funding Agreement.

8

39.     Paragraph 5 of the 2018 Digital Marketing Arbitrage Funding Agreement provides for the acceleration of all amounts due thereunder in the event of a default, including principal, interests, attorneys' fees and costs.

40.     Paragraph 6 of the 2018 Digital Marketing Arbitrage Funding Agreement provides that Harbor City waived any right to receive notice of acceleration or notice of default.

41.     Harbor City's failure to pay any of the quarterly interest-only payments triggered the acceleration clause of the 2018 Digital Marketing Arbitrage Funding Agreement.

42.     Paragraph 14 of the 2018 Digital Marketing Arbitrage Funding Agreement states, in relevant part, that, in the event a final payout is not timely requested and realized at the maturity date:

> "… [the] note shall roll over for another 2-year term, at same rate, with principal amount consisting of previous year principal and interest due (if any) combined."

43.     Beginning on or around January 11, 2018, Plaintiff made numerous demands for payment of the entire principal and interest due from Harbor City under the 2016 and the 2018 Digital Marketing Arbitrage Funding Agreements as result of Harbor City's default and breach thereunder. Such demands were well within the time limit to prevent any alleged roll over of the debt into an additional 2-year term.

44.     On or around May 16, 2019, Plaintiff, by and through his counsel: (i) notified Harbor City of its default under the terms of 2018 Digital Marketing Arbitrage Funding Agreement by failing to pay the principal and interest when due, or any date thereafter; (ii) gave notice that the acceleration clause in Paragraph 5 of the Agreement had been triggered as a result of the default; and (iii) demanded immediate payment of all amounts due, plus attorneys' fees and costs, as provided for in Paragraph 8 of the Agreement. A copy of the demand letter is attached hereto as **Exhibit D**.

9

45.     As a direct and proximate result of Harbor City's breach of the 2018 Digital Marketing Arbitrage Funding Agreement, Plaintiff has been damaged and is entitled to recover its compensatory damages, pre-judgment interest, and reimbursement of attorneys' fees and costs.

WHEREFORE, Plaintiff demands judgment against Harbor City for all of the above-described compensatory damages, pre-judgment interest, attorneys' fees and costs pursuant to Paragraph 8 of the 2018 Digital Marketing Arbitrage Funding Agreement, and such other and further relief as this Court deems appropriate.

**COUNT III – FRAUD IN THE INDUCEMENT**
*(Against Harbor City)*

Plaintiff sues Harbor City for fraud in the inducement, and as grounds therefore asserts the following:

46.     Plaintiff hereby adopts and realleges paragraphs 1 through 17, as if each were fully and independently realleged herein.

47.     At all relevant times throughout March 2016, Harbor City misrepresented the true nature of its business to Plaintiff by claiming that its business consisted of the utilization of its "client facing brand Responzive.com" as a "digital arbitrage" to yield significant returns for investors from the "high-growth +$200B Internet advertising sector," when, based on information and belief: (i) Responzive.com, was, at all relevant times, actually nothing more than a shell website, which listed a non-existent physical address in San Francisco, as well as a generic contact email address (reservations@domains.com) belonging to its web-hosting company; and (ii) Maroney appears to have been utilizing Harbor City to employ a multi-level marketing scheme to scam investors into investing in Harbor City's scheme to sell junk "leads" to small business owners, with little to no return for investors, despite written marketing materials describing Harbor City's business as a "digital arbitrage" and promising investors the "Alternative Investment of the

Decade" and "double digit returns" (collectively, the "Misrepresentations"). In actuality, besides Harbor City's deceptive and hyperbolic marketing materials, there is little to no evidence that Harbor City had any legitimate business purpose other than inducing loans which it could not repay.

48.     Harbor City knew, or should have known, at all times that the Misrepresentations were false.

49.     Harbor City made the Misrepresentations intentionally in order to induce Plaintiff to enter into the 2016 and 2018 Digital Marketing Arbitrage Funding Agreements.

50.     Plaintiff suffered injury as a result of his justifiable reliance on the Misrepresentations.

51.     Harbor City's Misrepresentations and intentional actions were the proximate cause of the damages to Plaintiff.

52.     Harbor City's Misrepresentations and intentional actions were independent from the acts that caused the breach of the 2016 and 2018 Digital Marketing Arbitrage Funding Agreements.

53.     Harbor City's Misrepresentations and intentional actions do not involve a cause of action related to product liability.

WHEREFORE, Plaintiff demands judgment against Harbor City for all of the above-described compensatory damages, punitive damages, pre-judgment interest, attorneys' fees and costs, and such other and further relief as this Court deems appropriate.

## COUNT IV – VIOLATION OF FLORIDA
## DECEPTIVE AND UNFAIR TRADE PRACTICES ACT
### *(Against Harbor City)*

Plaintiff sues Harbor City for deceptive acts and/or an unfair trade practices in violation of §§501.201, *et. seq.* of the Florida Statutes ("FDUPTA").

54.     Plaintiff hereby adopts and realleges paragraphs 1 through 17, and 47, as if each were fully and independently realleged herein.

55.     Plaintiff is a person, as that term is defined under FDUPTA.

56.     Harbor City's brazen marketing practices, as set forth in paragraphs 12 through 17 of this Complaint, and as realleged herein, were intended to induce unwitting persons, such as Plaintiff, to invest in its business, and the Misrepresentations, as that term is defined herein, in paragraph 47, above, and, as realleged herein, constitute deceptive acts and/or an unfair trade practices in violation of §§501.201, *et. seq.* of the Florida Statutes ("FDUPTA").

57.     Such actions and unfair trade practices are the proximate cause of damages of Plaintiff's damages.

58.     Plaintiff suffered actual damages as a result of Plaintiff's violations of FDUPTA.

59.     Section 501.2105 of FDUPTA provides for the payment of the prevailing party's attorneys' fees and costs in a civil action by the non-prevailing party.

WHEREFORE, Plaintiff demands judgment against Harbor City for all of the above-described compensatory damages, pre-judgment interest, attorneys' fees and costs, and such other and further relief as this Court deems appropriate.

## COUNT V – FRAUD IN THE INDUCEMENT
### *(Against Maroney)*

Plaintiff sues Maroney for fraud in the inducement, and as grounds therefore asserts the following:

60.     Plaintiff hereby adopts and realleges paragraphs 1 through 17, and 47, as if each were fully and independently realleged herein.

61.     At all relevant times throughout March 2016, through the Misrepresentations, as that term is defined in paragraph 47, above, and, as realleged herein, Maroney misrepresented the true nature of Harbor City's business to Plaintiff.

62.     Maroney knew, or should have known, at all times that the Misrepresentations were false.

63.     Maroney made the Misrepresentations intentionally in order to induce Plaintiff to enter into the 2016 and 2018 Digital Marketing Arbitrage Funding Agreements.

64.     Maroney suffered injury as a result of his justifiable reliance on the Misrepresentations.

65.     Maroney's Misrepresentations and intentional actions were the proximate cause of the damages to Plaintiff.

66.     Maroney's Misrepresentations and intentional actions were independent from the acts that caused the breach of the 2016 and 2018 Digital Marketing Arbitrage Funding Agreements.

67.     Maroney's Misrepresentations and intentional actions do not involve a cause of action related to product liability.

68.     Maroney's intentional actions and Misrepresentations provide a sufficient basis to pierce and set aside the corporate veil of Harbor City so that Maroney may be held personally liable for the damages he caused to Plaintiff.

13

WHEREFORE, Plaintiff demands judgment against Maroney for all of the above-described compensatory damages, punitive damages, pre-judgment interest, attorneys' fees and costs, and such other and further relief as this Court deems appropriate.

Dated: July 30, 2019

Respectfully Submitted,

VAKSMAN KHALFIN, PC
Attorneys for Ron Scherzinger

Telephone: (877) 780-4727
Facsimile: (877) 888-3799

By:     /s/ Melissa A. Youngman
MELISSA A. YOUNGMAN
Florida Bar No. 0690473
721 Maitland Avenue
Altamonte Springs, FL 32701
Email: melissayoungman@melissayoungman.com
        myoungman@vaksman-khalfin.com