## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

SECURITIES AND EXCHANGE
COMMISSION,

      Plaintiff,

v.                               Case No: 6:21-cv-694-CEM-DCI

HARBOR CITY CAPITAL CORP.,
HARBOR CITY VENTURES, LLC,
HCCF-1, LLC,
HCCF-2, LLC,
HCCF-3, LLC,
HCCF-4, LLC,
HCCF-5, LLC,
HARBOR CITY DIGITAL VENTURES, INC.,
HCC MEDIA FUNDING, LLC,
JONATHAN P. MARONEY,

      Defendants,

and

CELTIC ENTERPRISES, LLC and
TONYA L. MARONEY

      Relief Defendants.

_____/

## THE RECEIVER'S SECOND QUARTERLY STATUS REPORT

Receivership Information and Activity from January 1, 2022 through
March 31, 2022

## TABLE OF CONTENTS

INTRODUCTION ................................................................ 3

BACKGROUND ................................................................. 4

    1.    Procedure and Chronology .................................... 4

    2.    The Receivership Process ..................................... 6

    3.    Overview of Preliminary Findings ................... 10

    4.    Opinions of the Receiver ..................................... 10

ACTIONS TAKEN BY THE RECEIVER ........................ 11

    5.    Securing the Receivership Estate ...................... 11

        A.    Fund Accounting ........................................ 11

            1.    Accounts at Wells Fargo Bank, N.A. ................. 12

            2.    Accounts at JPMorgan Chase, N.A .................... 12

            3.    Accounts at Bank of America ............................. 13

        B.    Securing Real Property ............................. 13

        C.    Identification of Personal Property ....................... 15

        D.    Securing the Receivership Entities' Books and Records ................................................................ 15

        E.    Operating Businesses ................................ 16

    6.    Pending and Contemplated Litigation ........................... 16

        A.    Pending Litigation ..................................... 16

        B.    Contemplated Litigation ........................... 17

        C.    Communications with Investors. ........................... 18

    7.    The Next Ninety Days ........................................ 19

CONCLUSION ................................................................ 19

# INTRODUCTION

Katherine C. Donlon, the Court-appointed receiver over the assets of the above-captioned corporate defendants and relief defendants (the "**Receiver**" and the "**Receivership**" or "**Receivership Estate**"), files this First Quarterly Status Report to inform the Court, investors, creditors, and others interested in this Receivership of activities to date as well as the Receiver's proposed course of action.  The Receiver has established an informational website, www.harborcityreceivership.com.  The Receiver will continue to update the website regarding the Receiver's most significant actions, important Court filings, and other items that might be of interest to the public.  This Second Quarterly Status Report, as well as all subsequent reports, will be posted on the Receiver's website.

### Overview of Significant Activities During this Reporting Period

During the time covered by this Second Quarterly Status Report, the Receiver and her professionals engaged in the following significant activities:

- Obtained possession of 143 Lansing Island Drive, the largest asset of the Receivership;

- Signed listing agreement to sell 143 Lansing Island Drive;

- Made efforts to remediate 143 Lansing Island Drive in order to place it in the best, most cost-efficient position for sale;

- Continued investigations into Nations Best container business which received monies from Harbor City;

- Obtained possession of Defendant Maroney's Mercedes-Benz and jet skis;

- Had foreclosure action stayed which is pending in Brevard County;

- Transferred $159,123 from frozen bank accounts at Wells Fargo to a Receiver-controlled account;

- Continued to communicate with counsel for Jonathan Maroney, attempting to obtain documents;

- Fielded telephone calls and emails from investors;

- Provided a registration site for Harbor City investors on the Receiver's website www.harborcityreceivership.com.

The above activities are discussed in more detail in the pertinent sections of this Second Quarterly Status Report.

## BACKGROUND

### 1. Procedure and Chronology

On April 20, 2021, the Securities and Exchange Commission ("**SEC**") filed a complaint (Doc. 1) against (1) defendants Jonathan P. Maroney ("**Maroney**"); Harbor City Capital Corp., Harbor City Ventures, LLC, HCCF-1, LLC, HCCF-2, LLC, HCCF-3, LLC, HCCF-4, LLC, HCCF-5, LLC, Harbor City Digital Ventures, Inc., and HCC Media Funding, LLC ("collectively "**Harbor City defendants**") (collectively, the "**defendants**") and (2) relief defendant Celtic Enterprises, LLC ("**Celtic**" or "**relief**

**defendant**").  The foregoing corporate defendants and relief defendant are referred to as the "**Receivership Entities**."

The complaint charges the defendants with violations of the federal securities laws and regulations in connection with a Ponzi scheme. The SEC alleges that from at least May 2015 through the filing of the action, Harbor City raised more than $17 million from over 100 investors through a series of unregistered fraudulent securities[1] in Harbor City Ventures LLC and special purpose entities HCCF-1 LLC, HCCF-2 LLC, HCCF-3 LLC, HCCF-4 LLC and HCCF-5 LLC. Harbor City Capital Corp. served as the manager or HCCF-1 through 4, while Harbor City Digital Ventures served as the operator of those entities. HCC Media Funding was both the manager and operator of HCCF-5 LLC.

On April 21, 2021, the Court entered a Temporary Restraining Order ("TRO"). (Doc. 6). An evidentiary hearing on the SEC's motion for a Preliminary Injunction was scheduled for April 29, 2021. Prior to that hearing, the Court extended the TRO to May 7, 2021, rescheduling the hearing on the Preliminary Injunction to May 6, 2021. The hearing was

---

[1] Investments were made in the form of either promissory notes, funding agreements or alleged high yield, secured bonds. (Doc. 1 at ¶3).

later rescheduled for May 19, 2021 and the TRO was extended through May 19th. On May 18, 2021, Mr. Maroney entered a Consent to Entry of Preliminary Injunction, to Continue Asset Freeze and Other Relief. (Doc. 39). Mrs. Maroney submitted a similar Consent on May 19, 2021. (Doc. 41). A hearing was held on May 19th and the Court granted the motion the same day, converting the TRO into a preliminary injunction. (Doc. 56).

On November 8, 2021, the Court entered an order appointing Katherine Donlon as Receiver for the Receivership Entities. (Doc. 75) (the "Order Appointing Receiver"). The Court directed her, in relevant part, to (i) determine the nature, location and value of all property interests of the Receivership Entities; (ii) take custody, control and possession of all Receivership Property and records; (iii) manage, control, operate and maintain the Receivership Estates; and (iv) take such action as necessary and appropriate for the preservation of Receivership Property.

## 2. **The Receivership Process**

In May 2021, counsel for the SEC contacted Ms. Donlon to determine her willingness to serve as Receiver in this matter. On May 20, 2021, Ms. Donlon sent the SEC a letter outlining her experience working with receivership actions and attaching biographical information about

professionals she intended to retain should the SEC recommend and the Court approve her appointment.  *See* Exhibit 1 (Doc. 60-1). In the letter, Ms. Donlon informed the SEC that the Receiver and her attorneys would discount the rates they charge clients in private commercial litigation by approximately 15-30% to conserve resources and preserve the Receivership Estate.  Based on this information, the SEC recommended that the Court appoint Ms. Donlon as Receiver, and the Court did so on November 8, 2021. *See* Exhibit 2 (Doc. 75, incorporating Docs. 74 and 72-1).

Although the SEC recommended Ms. Donlon's appointment, the Receiver is an agent of the Court – not an agent or employee of the SEC. To ensure that the Court is informed of the Receiver's activities, the Order Appointing Receiver requires the Receiver to file this Quarterly Status Report within 30 days after the end of each calendar quarter. (Doc. 72-1 at ¶50). The Receivership Order also requires the Receiver to seek Court approval of most (if not all) material transactions, settlements, and agreements.

The Order Appointing Receiver also requires the Receiver to submit her Quarterly Fee Application within 45 days of the end of each calendar quarter. (Doc. 72-1, ¶ 56).  To ensure the activities of the Receiver and her professionals benefit the Receivership Estate or are otherwise appropriate,

the Receiver first reviews all invoices and makes any necessary adjustments.  The SEC has provided the Receiver with detailed billing instructions, and the Order Appointing Receiver requires the Receiver to comply with those instructions.  Doc. 72-1 ¶ 58.  The SEC also requires the Receiver to submit her applications for the payments of fees and costs first to the SEC for review and then to the Court for approval.  *Id.* ¶56.  The Receiver filed her First Motion for Fees on February 22, 2022. (Doc. 82) That motion is still pending. The Receiver is in regular communication with her professionals and the SEC to ensure her activities benefit the Receivership Estate or are otherwise necessary.

At the appropriate time, the Receiver will move the Court to establish a claims process for the distribution of funds to creditors, including defrauded investors.  As part of that process, she will seek Court approval of a proof of claim form and procedures for providing notice of the claims process to known and potential creditors, including publication in local and, if appropriate, national newspapers.  The Receiver will ask the Court to establish a claims bar date by which all claimants will be required to serve their proof of claim forms on the Receiver, who will then evaluate the claims.

After the Receiver completes her evaluation, she will present her determinations to the Court and ask the Court to approve them on an

interim basis.  She will then serve notice of her determinations on the claimants, who will have an opportunity to object to the Receiver's determinations through specific procedures approved by the Court and consistent with due process requirements.  Most objections can be resolved or settled using such procedures, but if any objections cannot be resolved, they will be presented to the Court for determination.  Through this process, the Receiver intends to establish groups or classes of creditors with approved claims that are entitled to receive distributions from the Receivership Estate.

Once the claims process has been completed or substantially completed, the Receiver will evaluate the amount of cash available for distribution and move the Court to approve a first interim distribution to claimants with approved claims.  If material claim objections are pending at the time the Receiver determines a distribution is appropriate, she might move the Court to establish reserves for the claims at issue so they do not impair the Receiver's ability to make a distribution to claimants with undisputed claims.  Multiple distributions may be made as assets become available, subject to cost/benefit concerns.

When the Receiver determines there are no more assets to collect or claims to pursue, she will move the Court to make a final distribution to

claimants and to close the Receivership. She will also file a final report and accounting. While the procedures outlined above are generalized and are subject to change as the Receiver learns more about the defendants and Receivership Entities, the Receiver is hopeful that these procedures and safeguards will allow her to return assets to creditors, including defrauded investors, in an efficient and cost-effective manner.

### 3. <u>Overview of Preliminary Findings</u>

As outlined by the SEC in its submissions to the Court, Harbor City operated as a textbook Ponzi scheme with funds from subsequent investors paying distributions to earlier investors. The scheme operated through a number of entities that commingled funds without any legitimate business purpose. Maroney, his wife and other family members received payments of almost $5 million from the Harbor City proceeds. (Doc. 4). Additionally, Maroney invested $1 million of Harbor City proceeds into a container rental business, Nations Best. This use of funds was never contemplated or disclosed in the investments made by the defrauded investors.

### 4. <u>Opinions of the Receiver</u>

Based on her preliminary review, the Receiver has reached the following conclusions regarding Harbor City:

- The Receivership Entities were involved in one continuous fraudulent scheme that utilized the same persons, methods and misrepresentations.

- The offerings made by the Receivership Entities are insolvent and without additional investor funds could not support operations or interest payments to investors.

- The Receivership should seek to recover the assets and monies taken by Mr. Maroney and his family for inclusion in the Receivership Estate to be liquidated and distributed to victims and creditors of this scheme.

- Attention should be given to the assertion of potential claims against professionals, financial institutions and others who facilitated, assisted, aided and abetted, participated in or profited from this scheme.

## ACTIONS TAKEN BY THE RECEIVER

Since inception, the Receiver has taken a number of steps to fulfill her mandates under the Order Appointing Receiver.

**5. Securing the Receivership Estate**

    **A.**    **Fund Accounting**

Attached as Exhibit 1 is the Fund Accounting for the quarter ending March 31, 2022.

### 1.    Accounts at Wells Fargo Bank, N.A.

Based on information received from the SEC and Mr. Maroney, the Receiver identified three accounts at Wells Fargo Bank, N.A. ("**Wells Fargo**") that were associated with the Defendants and Relief Defendant.

| Account No. | Account Title | Balance |
|---|---|---|
| XXXXXX 2879 | Harbor City Capital Corp. | $123,627.99 |
| XXXXXX 4389 | Harbor City Capital Corp. | $9,673.38 |
| XXXXXX 6246 | Celtic Enterprises LLC | $20,816.15 |

These funds have been transferred in January 2022 to a bank account at ServisFirst Bank controlled by the Receiver.

### 2.    Accounts at JPMorgan Chase, N.A.

The Receiver is working to update information the SEC received regarding accounts at JPMorgan Chase, N.A. ("**Chase**") that are or were associated with the Defendants and Relief Defendant.

| Account No. | Account Title |
|---|---|
| XXXXX1795 | Harbor City Ventures LLC |
| XXXXX9023 | Harbor City Digital Ventures, Inc. |
| XXXXX7215 | Harbor City Capital Corp. |

| XXXXX1213 | Tonya L. Maroney |
| XXXXX2091 | HCCF-1, LLC |

### 3.   Accounts at Bank of America

Receivership Entities held a number of accounts at Bank of America. The Receiver is continuing to investigate these accounts.

### B.   **Securing Real Property**

Jonathan and Tonya Maroney and their family reside at 143 Lansing Island Drive, Satellite Beach, Florida ("Lansing Island Property"). This residence was purchased by Relief Defendant Celtic Enterprises in June 2018 for $2,590,000. In March 2021, just a month before the SEC filed its action, Celtic executed a promissory note in the amount of $1,800,000 against the Lansing Island property. The initial note was held by Benworth Capital but was subsequently sold to a number of private investors.

Those investors filed a foreclosure action related to the note in a state court action in Brevard County – *Mira Holdings LLC, et al. v. Celtic Enterprises, LLC, et al.*, Case No. 05-2021-CA-052113 ("Foreclosure Case"). The plaintiffs in that case are seeking recovery of $1,800,000, plus unpaid and accrued interest, default interest at 18% per annum, plus applicable late fees, charges and other fees, costs and reasonable attorney's fees. Counsel for the Receiver attempted to have the Plaintiffs in the Foreclosure

Case stay their action but they would not voluntarily do so. A hearing was held on the motion to stay on April 19th and the Court granted the Receiver's motion.

The Receiver inspected the Lansing Island Property in January. She interviewed several different real estate professionals in the Brevard County area with whom to list the property. After these interviews, she chose Gibbs Baum with ONE Sotheby's International Realty. The listing agreement was signed on February 22, 2022. Based on representations from Maroney's counsel, the Maroneys were to vacate the property by March 10th. Based on this representation, the listing agreement stated that the listing would "go live" on March 16th. Unfortunately, the Maroneys did not fully vacate the house until March 21st.

The Lansing Island Property was in a state of disrepair and had not been well maintained. Efforts have been made deep clean the house, removing several dumpsters full of refuse. Also, landscapers were retained to work on the exterior of the property.

Since the listing of the property, the Receiver has received several offers and Mr. Baum is continuing to show the house. The Receiver hopes to have the Lansing Island Property under contract soon and will seek this Court's approval of the sale.

## C.    Identification of Personal Property

In addition to the real property owned by Celtic Enterprises, the Maroneys have two vehicles – 2018 Cadillac Escalade and a 2020 Mercedes-Benz S class convertible. Both vehicles are financed. As part of the negotiations to have the Maroneys vacate the Lansing Island Property, discussions were held between the SEC, the Receiver and Maroney's counsel regarding these automobiles. The Escalade had certain added functionality specifically to address physical infirmities within the Maroney family. It was determined that the Maroneys be allowed to keep the Escalade and turnover the Mercedes-Benz. The Receiver is in possession of the automobile and is working to transfer title.

The Maroneys also had four jet skis docked at the Lansing Island Property. Those have been left behind. Once title is transferred, the Receiver will seek the Court's permission to sell these.

## D.    Securing the Receivership Entities' Books and Records

Given that the Receiver was not appointed until seven months after the SEC case was filed, the offices of the Receivership Entities were already closed at the time of appointment. The Receiver was working with Maroney's counsel to access his cloud and email accounts. However, those efforts have been slow moving.

### E.     Operating Businesses

At the time of appointment, Harbor City had no operations *per se* for the Receiver to take over. However, Harbor City had invested over $1 million in a container company, Nations Best Services, Inc. The Receiver has communicated with and received some documents from Nations Best's owner, Nick Kavron, regarding the status of that entity and its operations. It is estimated that the company has receivables of approximately $400,000-500,000 through 2024. The Receiver is still investigating as to how best deal with this relationship.

### 6.  Pending and Contemplated Litigation

### A.     Pending Litigation

On December 8, 2021, the Receiver was made aware of two cases pending against Celtic Enterprises. The first, *Central Florida Product Installations, LLC DBA Florida Window and Door Solutions v. Celtic Enterprises, LLC,* Case No. 05-2021-CCC-051509 (Brevard County), was filed in County Court regarding monies owed for labor and materials related to doors at the Lansing Island Property. The Receiver filed a Motion to Stay which was agreed to by opposing counsel. The Court entered an Order on December 27, 2021 staying that action.

The second case was filed on November 8, 2021, and is a foreclosure action related to the Lansing Island Property, *Mira Holdings LLC, et al. v. Celtic Enterprises, LLC, et al.*, Case No. 05-2021-CA-052113, also in Brevard County. The Receiver filed a motion to stay in this case as well. Plaintiffs have not agreed to a stay of the case. As stated above, the Court recently granted the Receiver's motion to stay.

Recently, the Receiver became aware of a case pending in this district, *Martin v. Maroney, et al*, Case No. 6:21-cv-1484-WWB-LHP, wherein Mr. Maroney and the Receivership Entities are named defendants. The Receiver has reached out to Plaintiff's counsel seeking his cooperation in staying the case.

**B.**   **Contemplated Litigation**

The Receiver is reviewing information to determine if any individuals or entities have liability in connection with the activities underlying this case.  While the Receiver's investigation has only just begun, contemplated litigation can nevertheless be divided into two general categories.  First, the Receiver will endeavor to review monies invested and received back by investors so as to identify any investor who received more money from a Receivership Entity than he or she contributed to the Receivership Entity. In Ponzi schemes, such amounts are generally referred to as "**false profits**"

because the money transferred to the pertinent investor was not derived from legitimate activities but from other defrauded investors. Receivers in the Eleventh Circuit (and nationwide) have a clear right to recover false profits through fraudulent transfer or "**clawback**" litigation. *See, e.g., Wiand v. Lee, et al.*, 753 F.3d 1194 (11th Cir. 2014).

Second, the Receiver might also assert tort claims against brokers, accountants, sales agents, lawyers, and others who aided and abetted the scheme or otherwise knew or should have known of fraudulent activity. Due to the continued difficult in obtaining operational documents regarding Harbor City, the Receiver has not identified specific claims and potential defendants yet. However, the Receiver will institute such actions (with Court approval) if appropriate and in the best interests of the Receivership.

### C.   <u>Communications with Investors</u>.

On January 31, 2022, the Receiver sent an email to known, identifiable investors which informed the investors of the Receivership, the Receiver's website, and the opportunity for investors to register through the website. *See* www.harborcityreceivership.com/registration. Fifty-eight investors have registered at this point. In addition to the website, the Receiver and her team continue to field telephone calls and emails from investors regarding the status of the receivership.

7.    **The Next Ninety Days.**

The Order Appointing Receiver requires this First Quarterly Status Report (and all subsequent reports) to contain "[t]he Receiver's recommendations for a continuation or discontinuation of the receivership and the reasons for the recommendations."  Doc. 72-111 ¶ 51.H.  At this early stage, the Receiver recommends continuation of the Receivership because she still has (1) to complete the investigation of the activities of the Receivership entities, its principals and others; (2) to liquidate personal and real property; (3) to bring potential litigation, including contemplated clawback claims; and (4) establish a claims process for the distribution of funds.

During the next 90 days, the Receiver will seek to have the Lansing Island Property under contract and locate potential buyers for the Mercedes-Benz and jet skis; continue her assessment of the investment in Nations Best; continue to collect and analyze documents from nonparties and other sources; and assess potential claims against third-parties.

## CONCLUSION

Investors and other creditors of the Receivership Entities are encouraged to periodically check the Receiver's website (www.harborcityreceivership.com) for current information concerning this

19

Receivership.  If any investor has information that may be helpful in securing further assets for the Receivership Estate or identifying other potential parties who may have liability to either the Receivership Estate or investors, please email hcinfo@jclaw.com.

Dated this 2nd day of May, 2022.

Respectfully submitted,

**s/Katherine C. Donlon**
Katherine C. Donlon, Receiver

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on May 2, 2022, I electronically filed the

foregoing with the Clerk of the Court by using the CM/ECF system.

> */s/ Nicole Deese Newlon*
> NICOLE DEESE NEWLON
> Florida Bar No. 832391
> nnewlon@jclaw.com
> JOHNSON, CASSIDY,
> NEWLON & DECORT, P.A.
> 2802 N. Howard Avenue
> Tampa, Florida 33607
> Telephone: (813) 699-4859
> Facsimile: (813) 235-0462
> Secondary: kdonlon@jclaw.com;
> bwalker@jclaw.com
> *Counsel for Receiver Katherine Donlon*