## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

SECURITIES AND EXCHANGE
COMMISSION,

     Plaintiff,

v.                                                       Case No: 6:21-cv-694-CEM-DCI

HARBOR CITY CAPITAL CORP.,
HARBOR CITY VENTURES, LLC,
HCCF-1, LLC,
HCCF-2, LLC,
HCCF-3, LLC,
HCCF-4, LLC,
HCCF-5, LLC,
HARBOR CITY DIGITAL VENTURES, INC.,
HCC MEDIA FUNDING, LLC,
JONATHAN P. MARONEY,

     Defendants,

and

CELTIC ENTERPRISES, LLC and
TONYA L. MARONEY

     Relief Defendants.

_____/

## RECEIVER'S UNOPPOSED SECOND QUARTERLY FEE APPLICATION FOR ORDER AWARDING FEES, COSTS, AND REIMBURSEMENT OF COSTS TO RECEIVER AND HER PROFESSIONALS

Katherine C. Donlon, the Court-appointed Receiver over the corporate Defendants and Relief Defendant Celtic Enterprises, LLC (the "**Receiver**" and the "**Receivership**" or "**Receivership Estate**") pursuant to the Court's Order dated November 8, 2021 (Doc. 75) (the "**Order Appointing Receiver**"), respectfully submits this Second Quarterly Fee Application to the Court for the entry of an order awarding fees and the reimbursement of costs to the Receiver and her professionals. This Application covers all fees and costs incurred from January 1, 2022 through March 31, 2022. Attached as **Exhibit 1** is the Receiver's Fund Accounting Report.[1]

During the time covered by this Motion, among other things, the Receiver and her counsel have done the following:

- Obtained possession of 143 Lansing Island Drive, the largest asset of the Receivership;

- Signed listing agreement to sell 143 Lansing Island Drive;

- Made efforts to remediate 143 Lansing Island Drive in order to place it in the best, most cost-efficient position for sale;

- Continued investigations into Nations Best container business which received monies from Harbor City;

---

[1] The Securities and Exchange Commission ("**SEC**" or the "**Commission**") provided the Receiver with detailed Billing Instructions for Receivers in Civil Actions Commenced by the Commission (the "**Billing Instructions**"). The Accounting Report is one of the requirements contained in the Billing Instructions.

- Obtained possession of Defendant Maroney's Mercedes-Benz and jet skis;

- Had foreclosure action stayed which is pending in Brevard County;

- Transferred $159,123 from frozen bank accounts at Wells Fargo to a Receiver-controlled account;

- Continued to communicate with counsel for Jonathan Maroney, attempting to obtain documents;

- Fielded telephone calls and emails from investors;

- Provided a registration site for Harbor City investors on the Receiver's website www.harborcityreceivership.com.

### Case Background and Status

As of the date of filing this Application, the Court has appointed

Katherine C. Donlon as Receiver over the assets of the following entities:

(1) Defendants Harbor City Capital Corp., Harbor City Ventures, LLC, HCCF-1, LLC, HCCF-2, LLC, HCCF-3, LLC, HCCF-4, LLC, HCCF-5, LLC, Harbor City Digital Ventures, Inc., and HCC Media Funding, LLC ("collectively "**Harbor City defendants**" or the "**defendants**");  and

(2) Relief defendant Celtic Enterprises, LLC ("**Celtic**" or "**relief defendant**").

The foregoing corporate defendants and relief defendant are referred to as

the "**Receivership Entities**."

On May 2, 2022, the Receiver filed her Second Quarterly Status

Report (Doc. 85) (the "**Quarterly Status Report**"), which contains

information regarding the case background and status; the recovery of

assets; financial information about Receivership Entities; the Receiver's proposed course of action regarding assets in the Receivership Estate; the potential establishment of a claims process; and related (and/or contemplated) litigation involving Receivership Entities. The Quarterly Status Report addresses all activity that resulted in the fees and costs sought in this motion.

### Professional Services Rendered and Costs Incurred

The Order Appointing Receiver authorizes the Receiver to "solicit persons and entities ('Retained Personnel') to assist her in carrying out the duties and responsibilities described in this Order" and states that the "Receiver and Retained Personnel are entitled to reasonable compensation and expense reimbursement from the Receivership Estates," subject to approval by the Court. *See* Doc. 72-1 ¶55. The Order Appointing Receiver also specifically authorized the Receiver to retain Nicole D. Newlon of Johnson, Cassidy, Newlon & DeCort, P.A. ("**JCND**") to provide legal services. *See* Doc. 72-1 ¶2. The Order Appointing Receiver requires that the Receiver obtain the Court's authorization of the retention of any Retained Personnel, other than counsel mentioned. *See* Doc. 72-1 ¶ 54. The Receiver has previously filed her First Quarterly Fee Application on January 31, 2022 (Doc 81). Recently, the Magistrate issued a Report and

Recommendation recommending that the District Court grant that motion (Doc. 86).

As shown in the Quarterly Status Report, the Professionals have provided services and incurred expenses to investigate the affairs of the Receivership Entities, preserve Receivership assets, attempt to locate and recover assets, and analyze investor information for an eventual claims process and possible litigation. These services are for the benefit of aggrieved investors, creditors, and other interested parties.

## I.   <u>The Receiver.</u>

The Receiver requests the Court award her fees for the professional services rendered and costs incurred from January 1, 2022 through March 31, 2022, in the amount of $15,680.00 and $423.90, respectively. The standard hourly rate the Receiver charges clients in private litigation is $425. However, the Receiver agreed, for purposes of her appointment as the Receiver, that her hourly rate would be reduced to $350, representing nearly an eighteen percent discount off the standard hourly rate which she charges clients in comparable matters. This rate was set forth in the Receiver's submission to the SEC. *See* Doc. 60, Ex. 1.

The Receiver commenced services upon her appointment. The Receiver has billed his time for these activities in accordance with the

Billing Instructions, which request that this motion contain a narrative of each "business enterprise or litigation matter" for which outside professionals have been employed.  The Billing Instructions identify each such business enterprise or litigation matter as a separate "project." Further, the Billing Instructions request that time billed for each project be allocated to one of several Activity Categories.[2]  At this early stage of the Receivership, no separate matters have been commenced to warrant billing as a separate project.

For the time covered by this motion, the work of the Receiver and JCND focused on investigating the fraud and related activities, locating and taking control of Receivership assets, investigating and pursuing additional assets for the Receivership, and analyzing investor information

---

[2] The Activity Categories set forth by the Commission in the Billing Instructions are as follows: (1) Asset Analysis and Recovery, which is defined as identification and review of potential assets including causes of action and non-litigation recoveries; (2) Asset Disposition, which is defined as sales, leases, abandonment and related transaction work (where extended series of sales or other disposition of assets is contemplated, the Billing Instructions provide that a separate category should be established for each major transaction); (3) Business Operations, which is defined as issues related to operation of an ongoing business; (4) Case Administration, which is defined as coordination and compliance activities, including preparation of reports to the court, investor inquiries, etc.; (5) Claims Administration and Objections, which is defined as expenses in formulating, gaining approval of and administering any claims procedure; and (6) Employee Benefits/Pensions, which is defined as review issues such as severance, retention, 401K coverage and continuance of pension plan.  The Billing Instructions provide that time spent preparing motions for fees may not be charged to the Receivership Estate.  In accordance with these instructions, the Receiver created an additional Activity Category for work on fees motions and has accounted for time spent on such work but has not charged any amount for that work.

for an eventual claims process and possible litigation.  These activities of the Receiver are set forth in detail in the Quarterly Status Report.  A copy of the statement summarizing the Receiver's services rendered for the Receivership is attached as **Exhibit 2**.  The Receiver's time and fees for services rendered for each Activity Category from January 1, 2022 through March 31, 2022, are as follows:

**Receivership**
**Receiver's Time and Fees for Services Rendered**

| Activity Category | Hours Expended | Fee Amount |
|---|---|---|
| Asset Analysis and Recovery | 8.9 | $3,115.00 |
| Asset Disposition | 25 | $8,750.00 |
| Case Administration | 10.9 | $3,815.00 |
| **TOTAL** | **44.8** | **$15,680.00** |

In addition to legal fees, Receiver advanced costs of $423.90 as summarized below:

| Costs | Total |
|---|---|
| Travel | $198.90 |
| Website | $225.00 |
| **Total** | **$423.90** |

## II.    <u>**Johnson, Cassidy, Newlon & DeCort P.A. ("JCND")**</u>

The Receiver requests the Court award JCND fees for professional services rendered and costs incurred from January 1, 2022 through March 31, 2022, in the amounts of $7,965.00 and $3,320.18, respectively.   A categorization and summary of all fees and costs for which JCND seeks reimbursement is attached as **<u>Exhibit 3</u>**.

As an accommodation to the Receiver and to conserve the resources of the Receivership Estate, JCND's attorneys and paralegals have agreed to reduce their standard rates as provided in the fee schedule attached as **<u>Exhibit 4</u>**.   JCND began providing services upon the appointment of the Receiver.   The activities of JCND for the time covered by this motion are set forth in the Quarterly Status Report. JCND has billed time for these activities in accordance with the Billing Instructions.   As discussed above, at this early stage of the Receivership, the work of the Receiver and JCND focused on investigating the fraud and related activities, locating and taking control of Receivership assets, investigating and pursuing assets for the Receivership, and analyzing investor information for the eventual claims process and possible litigation.   JCND's time and fees for services rendered on this matter for each Activity Category are as follows:

### Receivership
### JCND's Time and Fees for Services Rendered

| Activity Category | Hours Expended | Fee Amount |
|---|---|---|
| Asset Analysis and Recovery | 17.4 | $5,370.00 |
| Asset Disposition | 6 | $1,455.00 |
| Case Administration | 2.9 | $615.00 |
| **Total** | **26.3** | **$7,965.00** |

A summary of the professionals' hours rendered during the time covered by this Motion is set forth below.

| Professional | Position | Yrs. Exp. | Billed Hours | Rate | Total |
|---|---|---|---|---|---|
| Nicole D. Newlon (NDN) | Partner | 18 | 20.10 | $350.00 | $7,035.00 |
| Michelle Patel (MBP) | Paralegal | 18 | 4.2 | $150.00 | $630.00 |
| Mary Gura (MG) | Paralegal | 17 | 2.0 | $150.00 | $300.00 |
| Fees | | | | | $7,965.00 |
| Disbursements | | | | | $3,320.18 |
| Total | | | | | $11,285.18 |

In addition to these legal fees, JCND advance costs of $3,320.18 as summarized below:

9

| Costs | Total |
|---|---|
| Utilities/Clean Up for 143 Lansing Island Drive | $2,775.38 |
| USPS Fees | $19.80 |
| Service Fees | $300.00 |
| Website-related Fees | $225.00 |
| **Total** | **$3,320.18** |

## MEMORANDUM OF LAW

It is well settled that this Court has the power to appoint a receiver and to award the receiver and those appointed by her fees and costs for their services. *See, e.g., S.E.C. v. Elliott*, 953 F.2d 1560 (11th Cir. 1992) (receiver is entitled to compensation for faithful performance of his duties); *Donovan v. Robbins*, 588 F. Supp. 1268, 1272 (N.D. Ill. 1984) ("[T]he receiver diligently and successfully discharged the responsibilities placed upon him by the Court and is entitled to reasonable compensation for his efforts."); *S.E.C. v. Custable*, 1995 WL 117935 (N.D. Ill. Mar. 15, 1995) (receiver is entitled to fees where work was of high quality and fees were reasonable); *S.E.C. v. Mobley*, 1317RCC, 2000 WL 1702024 (S.D.N.Y. Nov. 13, 2000) (court awarded reasonable fees for the receiver and his professionals); *see also* Doc. 11 ¶ 16. The determination of fees to be awarded is largely within the discretion of the trial court. *See Monaghan*

10

*v. Hill*, 140 F.2d 31, 34 (9th Cir. 1944). In determining reasonable compensation for the services rendered by the Receiver and her Professionals, the Court should consider the circumstances surrounding the Receivership. *See Elliot*, 953 F.2d at 1577.

In determining the reasonableness of fees, the Court must calculate the lodestar, which is the "number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). This is in part based on the nature and extent of the services rendered and the value of those services. *See Grant v. George Schumann Tire & Battery Co.*, 908 F.2d 874, 877-78 (11th Cir. 1990) (bankruptcy fee award case addressing the issue of attorney's fees generally before considering specific requirements in the bankruptcy context). Additionally, the Court should consider the twelve factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), a case involving an award of attorneys' fees under federal civil rights statutes, as incorporated by the Eleventh Circuit in *Grant*, a bankruptcy case, are as follows: (1) the time and labor required; (2) the novelty and difficulty of the questions presented; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee for

similar work in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or by the circumstances; (8) the amount involved and results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. Based on the information provided herein as well as the Receiver's First Quarterly Status Report, the Receiver believes that the Court when considering these factors and the work accomplished during this quarter of the Receivership will determine that the Receiver's motion for fees is reasonable and should be granted.

A receiver and the team she assembles is entitled to reasonable compensation and courts have looked at several factors in determining reasonableness: (1) the results achieved by the receiver; (2) the ability, reputation and other professional qualities of the receiver; (3) the size of the estate and its ability to afford the expenses and fees; and (4) the time required to conclude the receivership. *SEC v. W.L. Moody & Co*, 374 F. Supp. 465, 480-484 (S.D. Tex. 1974). In this case, the Receiver and her counsel have begun investigating, locating, preserving and/or liquidating assets for the benefit of defrauded investors. Additionally, the Receiver

has kept in communication with the defrauded investors and various regulators investigating the fraud.

Here, because of the nature of this case, it is necessary for the Receiver to employ attorneys experienced and familiar with financial frauds, federal receiverships, securities, banking, and finance. Further, to perform the services required and achieve the results obtained to date, the skills and experience of the Receiver and the Professionals in the areas of fraud, securities, computer and accounting forensics, and financial transactions are indispensable.

As discussed above, the Receiver and JCND have discounted their normal and customary rates as an accommodation to the Receivership and to conserve Receivership assets. The rates charged by the attorneys and paralegals are at or below those charged by attorneys and paralegals of comparable skill from other law firms in the Middle District of Florida.

While the Receiver is sensitive to the need to conserve the Receivership Entities' assets, she believes the fees and costs expended to date are reasonable, necessary, and benefited the Receivership. Notably, the Commission has no objection to the relief sought in this motion. *Custable*, 1995 WL 117935 at *7 ("In securities law receiverships, the

position of the SEC in regard to the awarding of fees will be given great weight.").

## **CONCLUSION**

Under the Order Appointing Receiver, the Receiver, among other things, is authorized and empowered to engage professionals to assist her in carrying out her duties and obligations. The Order Appointing Receiver further provides that she apply to the Court for authority to pay herself and her Professionals for services rendered and costs incurred. In exercising her duties, the Receiver has determined that the services rendered and their attendant fees and costs were reasonable, necessary, advisable, and in the best interests of the Receivership.

WHEREFORE, Katherine C. Donlon, the Court-appointed Receiver, respectfully requests that this Court award the following sums and direct that payment be made from the Receivership assets:

| | |
|---|---|
| Katherine C. Donlon, Receiver | $16,103.90 |
| Johnson, Cassidy, Newlon & DeCort | $11,285.18 |

## <u>LOCAL RULE 3.01(g) CERTIFICATION</u>

Undersigned counsel for the Receiver has conferred with counsel for the SEC and defendant Jonathan P. Maroney and is authorized to represent to the Court that neither opposes the relief requested in this motion.

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that on May 20, 2022, I electronically filed a true and correct copy of the foregoing with the Clerk of the Court through the CM/ECF system, which served counsel of record.

**/s/ Nicole D. Newlon**
NICOLE D. NEWLON (FBN: 832391)
nnewlon@jclaw.com
JOHNSON, CASSIDY,
NEWLON & DECORT, P.A.
2802 N. Howard Avenue
Tampa, Florida 33607
T: (813) 699-4859/F: (813) 235-0462
Secondary: kdonlon@jclaw.com;
bwalker@jclaw.com

*Counsel for Receiver Katherine Donlon*

15

## RECEIVER'S CERTIFICATION

The Receiver has reviewed this Second Quarterly Fee Application for Order Awarding Fees, Costs, and Reimbursement of Costs to Receiver and Her Professionals (the "**Application**").

To the best of the Receiver's knowledge, information, and belief formed after reasonable inquiry, the Application and all fees and expenses herein are true and accurate and comply with the Billing Instructions provided to the Receiver by the Securities and Exchange Commission.

All fees contained in the Application are based on the rates listed in the fee schedule, attached as Exhibit 4.  Such fees are reasonable, necessary, and commensurate with (if not below the hourly rate that is commensurate with) the skill and experience required for the activity performed.

The Receiver has not included in the amount for which reimbursement is sought the amortization of the cost of any investment, equipment, or capital outlay (except to the extent that any such amortization is included within the permitted allowable amounts set forth in the Billing Instructions for photocopies and facsimile transmission).

To the extent the Receiver seeks reimbursement for any service which the Receiver justifiably purchased or contracted for from a third

party (such as copying, imaging, bulk mail, messenger service, overnight courier, computerized research, or title and lien searches), the Receiver has requested reimbursement only for the amount billed to the Receiver by the third-party vendor and/or paid by the Receiver to such vendor. The Receiver is not making a profit on such reimbursable services.

The Receiver believes that the fees and expenses included in this Application were incurred in the best interests of the Receivership Estate. With the exception of the Billing Instructions and the Court-approved engagements described above, the Receiver has not entered into any agreement, written or oral, express or implied, with any person or entity concerning the amount of compensation paid or to be paid from the Receivership Estate, or any sharing thereof.

**s/ Katherine C. Donlon**
Katherine C. Donlon