UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

SECURITIES AND EXCHANGE
COMMISSION,

    Plaintiff,

v.                                                        Case No: 6:21-cv-694-CEM-DCI

HARBOR CITY CAPITAL CORP.,
HARBOR CITY VENTURES, LLC,
HCCF-1, LLC,
HCCF-2, LLC,
HCCF-3, LLC,
HCCF-4, LLC,
HCCF-5, LLC,
HARBOR CITY DIGITAL VENTURES, INC.,
HCC MEDIA FUNDING, LLC,
JONATHAN P. MARONEY,

    Defendants,

and

CELTIC ENTERPRISES, LLC and
TONYA L. MARONEY

    Relief Defendants.

_____/

## THE RECEIVER'S THIRD QUARTERLY STATUS REPORT

Receivership Information and Activity from April 1, 2022

through June 30, 2022

# TABLE OF CONTENTS

**INTRODUCTION** ............................................................................................. 3

**BACKGROUND** .............................................................................................. 5

    1.    Procedure and Chronology................................................... 5

    2.    Overview of Preliminary Findings ..................................... 7

    3.    Opinions of the Receiver ...................................................... 7

**ACTIONS TAKEN BY THE RECEIVER** ..................................................... 8

    4.    Securing the Receivership Estate ....................................... 8

        A.    Fund Accounting ............................................................ 8

            1.    Accounts at Wells Fargo Bank, N.A. ................... 9
            2.    Accounts at JPMorgan Chase, N.A.................... 10
            3.    Accounts at Bank of America .............................. 10

        B.    Securing Real Property ............................................... 10

        C.    Identification of Personal Property ........................ 12

        D.    Securing the Receivership Entities' Books and Records ....................................................................................... 13

        E.    Operating Businesses ................................................. 14

    5.    Pending and Contemplated Litigation ........................... 14

        A.    Pending Litigation ....................................................... 14

        B.    Contemplated Litigation ........................................... 15

    6.    Communications with Investors. ..................................... 17

    7.    The Next Ninety Days........................................................ 17

**CONCLUSION** ............................................................................................. 18

## INTRODUCTION

Katherine C. Donlon, the Court-appointed Receiver over the assets of the above-captioned corporate defendants and relief defendants (the "**Receiver**" and the "**Receivership**" or "**Receivership Estate**"), files this Third Quarterly Status Report to inform the Court, investors, creditors, and others interested in this Receivership of activities to date as well as the Receiver's proposed course of action. For a complete report of the Receiver's activities to date, the Receiver refers the reader to her previous reports. [Docs. 81 and 85] These reports can also be found on the Receiver's informational website, www.harborcityreceivership.com. The Receiver will continue to update the website regarding the Receiver's most significant actions, important Court filings, and other items that might be of interest to the public. This Third Quarterly Status Report, as well as all subsequent reports, will be posted on the Receiver's website.

**Overview of Significant Activities During this Reporting Period**

During the time covered by this Third Quarterly Status Report, the Receiver and her professionals engaged in the following significant activities:

- Continued efforts to remediate 143 Lansing Island Drive in order to place it in the best, most cost-efficient position for sale;

- Entered into two different contracts to sell 143 Lansing Island Drive, neither resulting in a final sale. However, in July, the Receiver has entered into a third contract for the sale of the property and will be seeking the Court's approval for the sale;

- Continued efforts to obtain relevant documents from Wells Fargo, Bank of America, and Chase;

- Subpoenaed Paul Donion, former counsel from Harbor City, for documents and in anticipation of his deposition in the coming quarter (presently scheduled for August 31, 2022);

- Identified pending federal court action involving Receivership entities and worked to stay the action (*Martin v. Maroney, et al.*, Case No. 6:21-cv-01484)

- Continued investigations into Nations Best container business, which received monies from Harbor City;

- Ascertained states in which the Receivership Entities are registered or authorized to do business, and update indicating the Receiver now as the Registered Agent;

- Monitored efforts by plaintiffs in foreclosure action for the rehearing of the motion granting the stay of the foreclosure action and a subsequent appeal of the order staying the foreclosure action (which has occurred in the third quarter);

- Paid the property taxes, $46,731.03, for the 143 Lansing Island Drive property;

- Continued to be stonewalled by counsel for Jonathan Maroney in the Receiver's attempts to obtain documents;

- Continued to field telephone calls and emails from investors and maintained the Receiver's website www.harborcityreceivership.com.

The above activities are discussed in more detail in the pertinent sections of this Third Quarterly Status Report.

## BACKGROUND

### 1. Procedure and Chronology

On April 20, 2021, the Securities and Exchange Commission ("**SEC**") filed a complaint (Doc. 1) against (1) defendants Jonathan P. Maroney ("**Maroney**"); Harbor City Capital Corp., Harbor City Ventures, LLC, HCCF-1, LLC, HCCF-2, LLC, HCCF-3, LLC, HCCF-4, LLC, HCCF-5, LLC, Harbor City Digital Ventures, Inc., and HCC Media Funding, LLC ("collectively "**Harbor City defendants**") (collectively, the "**defendants**") and (2) relief defendant Celtic Enterprises, LLC ("**Celtic**" or "**relief defendant**"). The foregoing corporate defendants and relief defendant are referred to as the "**Receivership Entities**."

The complaint charges the defendants with violations of the federal securities laws and regulations in connection with a Ponzi scheme. The SEC alleges that from at least May 2015 through the filing of the action, Harbor City raised more than $17 million from over 100 investors through a series of unregistered fraudulent securities[1] in Harbor City Ventures LLC and special purpose entities HCCF-1 LLC, HCCF-2 LLC, HCCF-3 LLC, HCCF-4 LLC and HCCF-5 LLC. Harbor City Capital Corp. served as the manager

---

[1] Investments were made in the form of either promissory notes, funding agreements or alleged high yield, secured bonds. (Doc. 1 at ¶3).

or HCCF-1 through 4, while Harbor City Digital Ventures served as the operator of those entities. HCC Media Funding was both the manager and operator of HCCF-5 LLC.

On April 21, 2021, the Court entered a Temporary Restraining Order ("TRO"). (Doc. 6). An evidentiary hearing on the SEC's motion for a Preliminary Injunction was scheduled for April 29, 2021. Prior to that hearing, the Court extended the TRO to May 7, 2021, rescheduling the hearing on the Preliminary Injunction to May 6, 2021. The hearing was later rescheduled for May 19, 2021 and the TRO was extended through May 19th. On May 18, 2021, Mr. Maroney entered a Consent to Entry of Preliminary Injunction, to Continue Asset Freeze and Other Relief. (Doc. 39). Mrs. Maroney submitted a similar Consent on May 19, 2021. (Doc. 41). A hearing was held on May 19th and the Court granted the motion the same day, converting the TRO into a preliminary injunction. (Doc. 56).

On November 8, 2021, the Court entered an order appointing Katherine Donlon as Receiver for the Receivership Entities. (Doc. 75) (the "Order Appointing Receiver"). The Court directed her, in relevant part, to (i) determine the nature, location and value of all property interests of the Receivership Entities; (ii) take custody, control and possession of all Receivership Property and records; (iii) manage, control, operate and

maintain the Receivership Estates; and (iv) take such action as necessary and appropriate for the preservation of Receivership Property.

## 2. Overview of Preliminary Findings

As outlined by the SEC in its submissions to the Court, Harbor City operated as a textbook Ponzi scheme with funds from subsequent investors paying distributions to earlier investors. The scheme operated through a number of entities that commingled funds without any legitimate business purpose. Maroney, his wife and other family members received payments of almost $5 million from the Harbor City proceeds. (Doc. 4). Additionally, Maroney invested $1 million of Harbor City proceeds into a container rental business, Nations Best. This use of funds was never contemplated or disclosed in the investments made by the defrauded investors.

## 3. Opinions of the Receiver

Based on her preliminary review, the Receiver has reached the following conclusions regarding Harbor City:

- The Receivership Entities were involved in one continuous fraudulent scheme that utilized the same persons, methods and misrepresentations.

- The offerings made by the Receivership Entities are insolvent and without additional investor funds could not support operations or interest payments to investors.

- The Receivership should seek to recover the assets and monies taken by Mr. Maroney and his family for inclusion in the Receivership Estate to be liquidated and distributed to victims and creditors of this scheme.

- Attention should be given to the assertion of potential claims against professionals, financial institutions and others who facilitated, assisted, aided and abetted, participated in or profited from this scheme.

## ACTIONS TAKEN BY THE RECEIVER

Since inception, the Receiver has taken a number of steps to fulfill her mandates under the Order Appointing Receiver.

### 4. Securing the Receivership Estate

#### A. Fund Accounting

Attached as Exhibit 1 is the Fund Accounting for the quarter ending June 30, 2022. This cash accounting report does not reflect non-cash or cash-equivalent assets. Thus, the value of any property discussed below is not included in the accounting report. From April 1, 2022 through June 30,

2022, the Receiver had $46,731.03 in business asset expenses. The ending fund balance is $112,391.97.

### 1. Accounts at Wells Fargo Bank, N.A.

Based on information received from the SEC and Mr. Maroney, the Receiver identified three accounts at Wells Fargo Bank, N.A. ("**Wells Fargo**") that were associated with the Defendants and Relief Defendant.

| Account No. | Account Title | Balance |
|---|---|---|
| XXXXXX 2879 | Harbor City Capital Corp. | $123,627.99 |
| XXXXXX 4389 | Harbor City Capital Corp. | $9,673.38 |
| XXXXXX 6246 | Celtic Enterprises LLC | $20,816.15 |

These funds were transferred in January 2022 to a bank account at ServisFirst Bank controlled by the Receiver. The only withdrawal in this past quarter was for $46,731.03 for the property taxes on 143 Lansing Island.

The Receiver obtained credit card statements for Wells Fargo cards held in the name of Harbor City Digital for both J.P. Maroney and his wife Tonya Maroney. The Receiver's team is continuing to review these statements.

### 2. Accounts at JPMorgan Chase, N.A.

The Receiver's team is working to update information the SEC received regarding accounts at JPMorgan Chase, N.A. ("**Chase**") that are or were associated with the Defendants and Relief Defendant. However, Chase is continuing to make this difficult.

| Account No. | Account Title |
|---|---|
| XXXXX1795 | Harbor City Ventures LLC |
| XXXXX9023 | Harbor City Digital Ventures, Inc. |
| XXXXX7215 | Harbor City Capital Corp. |
| XXXXX1213 | Tonya L. Maroney |
| XXXXX2091 | HCCF-1, LLC |

### 3. Accounts at Bank of America

Receivership Entities held a number of accounts at Bank of America. The Receiver is continuing to investigate these accounts.

### B. <u>Securing Real Property</u>

Jonathan and Tonya Maroney and their family reside at 143 Lansing Island Drive, Satellite Beach, Florida ("Lansing Island Property"). This residence was purchased by Relief Defendant Celtic Enterprises in June 2018 for $2,590,000. In March 2021, just a month before the SEC filed its action, Celtic executed a promissory note in the amount of $1,800,000

against the Lansing Island property. The initial note was held by Benworth Capital but was subsequently sold to a number of private investors.

Those investors filed a foreclosure action related to the note in a state court action in Brevard County – *Mira Holdings LLC, et al. v. Celtic Enterprises, LLC, et al.*, Case No. 05-2021-CA-052113 ("Foreclosure Case"). The plaintiffs in that case are seeking recovery of $1,800,000, plus unpaid and accrued interest, default interest at 18% per annum, plus applicable late fees, charges and other fees, costs and reasonable attorney's fees. Counsel for the Receiver attempted to have the Plaintiffs in the Foreclosure Case stay their action voluntarily, but they refused to do so. A hearing was held on the motion to stay on April 19th and the Court granted the Receiver's motion. The plaintiffs in that case sought reconsideration, which was not heard by the Court. In the third quarter, the plaintiffs filed a Notice of Appeal, which will be addressed in more detail in the next quarterly status report.

### Efforts to Market and Sell the House

The Lansing Island Property was in a state of disrepair and had not been well maintained. Much of the Receiver's efforts in this last quarter have been focused on rehabbing and maintaining the property in order to

get it sold. This has included ongoing payment of power, water, landscaping and pool maintenance.

The Receiver entered into a contract to sell the property in May 2022. However, the Buyer never came forward with the necessary deposits and therefore the contract was cancelled. A second contract was entered into in early July for $3,150,000. However, the buyer cancelled the contract under the inspection clause. The Receiver's broker worked with this buyer to negotiate a lower price after an agreement that the Receiver would make certain necessary repairs to the property. In late July, the parties signed an agreement for the sale of the property with that Buyer at $2,925,000. The Receiver has received the necessary deposits and is continuing to make the necessary repairs. The Receiver will be seeking the Court's approval of the sale in the near future.

### C. Identification of Personal Property

In addition to the real property owned by Celtic Enterprises, the Maroneys have two vehicles – 2018 Cadillac Escalade and a 2020 Mercedes-Benz S class convertible. Both vehicles are financed. As part of the negotiations to have the Maroneys vacate the Lansing Island Property, discussions were held between the SEC, the Receiver and Maroney's counsel regarding these automobiles. The Escalade had certain added

functionality specifically to address physical infirmities within the Maroney family. It was determined that the Maroneys be allowed to keep the Escalade and turnover the Mercedes-Benz. The Receiver is in possession of the automobile. The Maroneys also had four jet skis docked at the Lansing Island Property. Those have been left behind.  The Receiver made efforts to work with Mr. Maroney's counsel, Mark O'Mara, to transfer the title to these vehicles to no avail.  Then Mr. O'Mara withdrew. The Receiver is attempting to work with Mr. Maroney on the transfer of these assets, but cannot speak to him without his criminal counsel's guidance. Mr. Maroney's criminal attorney was unavailable until early August. The Receiver will continue in these efforts.

### D. **Securing the Receivership Entities' Books and Records**

Given that the Receiver was not appointed until seven months after the SEC case was filed, the offices of the Receivership Entities were already closed at the time of appointment. The Receiver was working with Maroney's counsel to access his cloud and email accounts but Mr. O'Mara failed to provide this information prior to this withdrawal. The Receiver is working on other avenues to try to obtain this information.

### E. Operating Businesses

At the time of appointment, Harbor City had no operations *per se* for the Receiver to take over. However, Harbor City had invested over $1 million in a container company, Nations Best Services, Inc. The Receiver has communicated with and received some documents from Nations Best's owner, Nick Kavron, regarding the status of that entity and its operations. It is estimated that the company has receivables of approximately $400,000-500,000 through 2024. Additional documents have been requested from Mr. Kavron to better understand the underlying business and how it might benefit the Receivership Estate.

## 5. Pending and Contemplated Litigation

### A. Pending Litigation

On December 8, 2021, the Receiver was made aware of two cases pending against Celtic Enterprises. The first, *Central Florida Product Installations, LLC DBA Florida Window and Door Solutions v. Celtic Enterprises, LLC,* Case No. 05-2021-CCC-051509 (Brevard County), was filed in County Court regarding monies owed for labor and materials related to doors at the Lansing Island Property. The Receiver filed a Motion to Stay, which was agreed to by opposing counsel. The Court entered an Order on December 27, 2021 staying that action.

The second case was filed on November 8, 2021, and is a foreclosure action related to the Lansing Island Property, *Mira Holdings LLC, et al. v. Celtic Enterprises, LLC, et al.*, Case No. 05-2021-CA-052113, also in Brevard County. As stated above, the case is stayed; however, the plaintiffs have filed a Notice of Appeal.

There was additional threatened litigation involving the Homeowner's Association for the 143 Lansing Island Drive property. The attorney for the HOA agreed to take no action with respect to its Notice of Intent to Foreclose Lien pending the Receiver's anticipated sale of the property.

Recently, the Receiver became aware of a case pending in this district, *Martin v. Maroney, et al*, Case No. 6:21-cv-1484-WWB-LHP, wherein Mr. Maroney and the Receivership Entities are named defendants. Receiver's counsel worked with opposing counsel to have the case stated.

### B.  Contemplated Litigation

The Receiver is reviewing information to determine if any individuals or entities have liability in connection with the activities underlying this case. While the Receiver's investigation has only just begun, contemplated litigation can nevertheless be divided into two general categories. First, the Receiver will endeavor to review monies invested and received back by

15

investors so as to identify any investor who received more money from a Receivership Entity than he or she contributed to the Receivership Entity. In Ponzi schemes, such amounts are generally referred to as "**false profits**" because the money transferred to the pertinent investor was not derived from legitimate activities but from other defrauded investors. Receivers in the Eleventh Circuit (and nationwide) have a clear right to recover false profits through fraudulent transfer or "**clawback**" litigation. *See, e.g., Wiand v. Lee, et al.*, 753 F.3d 1194 (11th Cir. 2014).

Second, the Receiver might also assert tort claims against brokers, accountants, sales agents, lawyers, and others who aided and abetted the scheme or otherwise knew or should have known of fraudulent activity. Due to the continued difficult in obtaining operational documents regarding Harbor City, the Receiver has not identified specific claims and potential defendants yet. However, the Receiver will institute such actions (with Court approval) if appropriate and in the best interests of the Receivership.

To this end, the Receiver's team has been seeking discovery from certain third-parties to discern whether or not the Receivership Estate has any viable claims. This investigation is ongoing.

### 6. Communications with Investors.

The Receiver continues to field telephone calls and emails with investors regarding the current status of the Receivership. Also, investors continue to register through the Receiver's website, www.harborcityreceivership.com/registration.

### 7. The Next Ninety Days.

The Order Appointing Receiver requires this Third Quarterly Status Report (and all subsequent reports) to contain "[t]he Receiver's recommendations for a continuation or discontinuation of the receivership and the reasons for the recommendations." Doc. 72-111 ¶ 51.H. At this early stage, the Receiver recommends continuation of the Receivership because she still has (1) to obtain additional documents to further investigate the activities of the Receivership entities, its principals and others; (2) to liquidate personal and real property; (3) to bring potential litigation, including contemplated clawback claims; and (4) establish a claims process for the distribution of funds.

During the next 90 days, the Receiver hopes to have sold the Lansing Island Property; have obtained title and sought purchasers for the Mercedes-Benz and jet skis; continue her assessment of the investment in

Nations Best; continue to collect and analyze documents from nonparties and other sources; and assess potential claims against third-parties.

## **CONCLUSION**

Investors and other creditors of the Receivership Entities are encouraged to periodically check the Receiver's website (www.harborcityreceivership.com) for current information concerning this Receivership. If any investor has information that may be helpful in securing further assets for the Receivership Estate or identifying other potential parties who may have liability to either the Receivership Estate or investors, please email hcinfo@jclaw.com.

Dated this 1st day of August, 2022.

> Respectfully submitted,
>
> **s/Katherine C. Donlon**
> Katherine C. Donlon, Receiver

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on August 1, 2022, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system.

> */s/ Nicole Deese Newlon*
> NICOLE DEESE NEWLON
> Florida Bar No. 832391
> nnewlon@jclaw.com
> JOHNSON, CASSIDY,
> NEWLON & DECORT, P.A.
> 2802 N. Howard Avenue
> Tampa, Florida 33607
> Telephone: (813) 699-4859
> Facsimile: (813) 235-0462
> Secondary: kdonlon@jclaw.com;
> bwalker@jclaw.com
> *Counsel for Receiver Katherine Donlon*