UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

SECURITIES AND EXCHANGE
COMMISSION,

    Plaintiff,

v.                                                    Case No: 6:21-cv-694-CEM-DCI

HARBOR CITY CAPITAL CORP.,
HARBOR CITY VENTURES, LLC,
HCCF-1, LLC,
HCCF-2, LLC,
HCCF-3, LLC,
HCCF-4, LLC,
HCCF-5, LLC,
HARBOR CITY DIGITAL VENTURES, INC.,
HCC MEDIA FUNDING, LLC,
JONATHAN P. MARONEY,

    Defendants,

and

CELTIC ENTERPRISES, LLC and
TONYA L. MARONEY

    Relief Defendants.
_____/

**RECEIVER'S MOTION TO DETERMINE INTEREST
AND FEES AS TO NON-PARTY MORTGAGE HOLDER FOR
<u>RECEIVERSHIP PROPERTY</u>**

    Katherine C. Donlon, the Court-appointed Receiver, by and through undersigned counsel, hereby files this Motion to Determine Interest and Fees

as to Non-Party Mortgage Holder for Receivership Property and states as follows:

## FACTUAL BACKGROUND

1. The Securities and Exchange Commission brought this enforcement action on April 20, 2021. (Dkt. 1).

2. On April 21, 2021, this Court entered an Order granting the Securities and Exchange Commission's ("SEC") Motion for Emergency Ex Parte Temporary Restraining Order ("TRO"), Asset Freese, and Other Injunctive Relief. (Dkt. 6).

3. On April 26, 2021, this Court issued an Order granting the Motion to Lift the Seal, and all previously filed pleadings, exhibits, and orders were placed on the public docket. (Dkt. 9).

4. On April 27, 2021, this Court entered an Order extending the TRO through and including May 7, 2021. (Dkt. 20).

5. On May 19, 2021, this Court entered an Order granting Plaintiff's Emergency Ex Parte Motion for Temporary Restraining Order, Asset Freeze, and Other Injunctive Relief. (Dkt. 56). This Order further served to convert to a preliminary injunction the TRO previously entered by the Court. *Id.*

6. Further, this same Order enjoined two non-parties, including Celtic Enterprises LLC ("Celtic") and Tonya Maroney. *Id.*

7. On November 8, 2021, this Court entered an Order Granting

Plaintiff Securities and Exchange Commission's Unopposed Motion for Appointment of Receiver which appointed Katherine C. Donlon as Receiver over the corporate defendants in this case as well as relief defendant Celtic Enterprises ("Receivership Entities"). (Dkt. 75).

8. On this same date, November 8, 2021, Mira Holdings LLC, and several other Plaintiffs (collectively the "Mira Plaintiffs"), filed an action in Brevard County, Florida, in the Circuit Court of the Eighteenth Judicial Circuit, for foreclosure and other relief. *See* **Exhibit A**.[1]

9. Therein, the Mira Plaintiffs asserted that Celtic executed and delivered a promissory note for $1,800,000.00 on March 13, 2021, and a mortgage deed and security agreement, and that the Mira Plaintiffs were the owners and holders of the note and mortgage. *Id*.

10. The Mira Plaintiffs further alleged that Celtic had defaulted, and that the Mira Plaintiffs were requesting $1,800,000.00 for the outstanding

---

[1] As set forth in this Court's Order (Dkt. 75), all persons receiving notice of the Court's Order are restrained and enjoined from directly or indirectly taking any action without the express written agreement of the Receiver, including dissipating or otherwise diminishing the value of any Receivership Property, which includes the Property at issue in this Motion. Paragraph 24(C) includes calling and accelerating any loan, mortgage, indebtedness or security agreement that affects any Receivership Property. The Receiver is required to promptly notify this Court of any failure of any person or entity to comply with the terms of the Court's Order. This Court therefore has jurisdiction of the Mira Plaintiffs and the matters at issue in this Motion, as they relate to Receivership Property.

3

principal, unpaid and accrued interest, default interest at 18% per annum, plus late fees, charges, and other fees, together with costs and reasonable attorney's fees. *Id.*

11. The Mira Plaintiff's action specifically relates to property owned by Celtic at 143 Lansing Island Drive, Indian Harbor Beach, Florida (the "Property").

12. In conjunction with the filing of the Complaint by the Mira Plaintiffs, the Mira Plaintiffs filed a Lis Pendens. *See* **Exhibit B**.

13. On November 18, 2021, the Receiver filed a Lis Pendens in Brevard County, Florida, specifically identifying the Property. (Dkt. 77).

14. On November 24, 2021, the Receiver caused to be issued a subpoena on Benworth Capital, which the Receiver believed to hold the note and mortgage at issue.

15. Having received no response, on December 6, 2021, counsel for the Receiver contacted the Registered Agent via email regarding Benworth's failure to produce documents. *See* **Exhibit C**, December 6, 2021 email.

16. That same date, December 6, 2021, counsel for Benworth filed in this Court an Objection and Motion to Quash or in the alternative for Protective Order to the Subpoena. (Dkt. 78).

17. On December 8, 2021, the Receiver was notified of the pending foreclosure action filed by the Mira Plaintiffs, and counsel for the Receiver

immediately contacted the Mira Plaintiffs' attorney, Mr. Albert Rey, providing the Court's Orders in this action that were pertinent to the Property, including the Order establishing the Receivership and the Receiver's duties thereunder. *See* **Exhibit D**.

18. Counsel for the Receiver further informed Mr. Rey that there was a stay of all ancillary proceedings by virtue of this Court's Order and requesting that Mr. Rey stay the Mira Plaintiff's foreclosure action. *Id*.

19. Receiving no response to the email to Mr. Rey, counsel for the Receiver filed a Motion to Stay the Mira Plaintiffs' foreclosure action on December 15, 2021. A copy of this Motion to Stay is attached as **Exhibit E**.

20. On January 18, 2022, the Mira Plaintiffs filed a Response in Opposition to the Receiver's Motion to Stay and a Motion to Strike the Motion to Stay. *See* **Exhibit F**.

21. Despite Receiver's counsel's assurances to the Mira Plaintiffs in numerous communications with counsel that the Property would be sold by the Receiver and the mortgage/note would be paid in full, the Mira Plaintiffs would not agree to a stay of their foreclosure action. The Receiver set the Motion to Stay for hearing for April 19, 2022.

22. Thereafter, the Circuit Court of Brevard County heard the Motion to Strike filed by the Mira Plaintiffs and the Motion to Stay filed by the Receiver. A copy of the transcript is attached as **Exhibit G**.

23. The Circuit Court in Brevard County, Florida, entered an Order Denying the Mira Plaintiffs' Motion to Strike and Granting the Receiver's Motion to Stay on June 9, 2022 (the "Brevard Order"). *See* **Exhibit H**.

24. On June 23, 2022, the Mira Plaintiffs filed a Motion for Rehearing or Reconsideration of the Brevard Order, which was denied on June 27, 2022. *See* **Composite Exhibit I**.

25. On July 11, 2022, the Mira Plaintiffs filed a Notice of Appeal. *See* **Exhibit J**.

26. In July, August, and September 2022, various motions were filed by the Mira Plaintiffs in the Fifth District Court of Appeal to extend various appellate deadlines, and on September 26, 2022, the Mira Plaintiffs filed a Petition for Writ of Certiorari. *See* **Exhibit K**.

27. The entire crux of the arguments asserted by the Mira Plaintiffs in opposition to the requested stay, for rehearing, and on appeal relate to the Receiver's request to stay the action, pursuant to this Court's Order.

28. In October 2022, the Receiver moved in this Court to sell the Property (Dkts. 111, 112), which was subsequently recommended for approval by the Magistrate Judge (Dkt. 113). This Court thereafter entered an Order Adopting the Report and Recommendations and Granting the Receiver's Motion. (Dkt. 118).

29. During this time period, the Receiver's counsel reached out to

obtain the payoff statement for the Mira Plaintiffs' note and mortgage. On October 13, 2022, after numerous requests for same, the Receiver was provided with the payoff information attached as **Exhibit L**.

30. For ease of reference, the following chart outlines the payoff information provided by the Mira Plaintiff's as of October 13, 2022:[2]

| Description | Amount |
|---|---|
| Principal Balance | $1,800,000.00 |
| Accrued Interest to 5/01/2022 to 10/14/2022 | $655,892.16 |
| Unpaid Charges | $1,022.82 |
| Other fees | $138.75 |
| Trust Balance | $-21,979.73 |
| Filing fees, service fees, title search* | $3,371.00 |
| Attorney's fees Albert D. Rey, P.A.* | $25,650.00 |
| Attorney's fees Becker & Poliakoff * | $3,851.00 |
| Attorney's fees Cole, Scott & Kissane* | $6,759.00 |
| Attorney's fees Chris The Carlyle Appellate Law Firm* | $15,797.01 |
| Attorney's fees Emmanuel Perez, Esquire* | $3,240.00 |
| Total for Principal, Interest and Other Charges | $2,493,742.01 |

**TOTAL DUE:   $2,493,742.01**

*NOTE ATTORNEY'S FEES AND COSTS CONTINUE TO ACCRUE ON A DAILY BASIS.

This payoff statement is good through **10/14/2022 at 12:00 NOON -EST**, time being of the essence.

31. The payoff statement makes clear the two issues that the Receiver now attempts to address with this Court:

    a. The Mira Plaintiffs incurred $55,297.01 in attorney's fees in the

---

[2] The payoff statement referenced the dates for the interest accrual as May 2022 to October 2022. This is a typographical error, and subsequent communications revealed that the interest was calculated from May 1, 2021, not May 1, 2022.

prosecution of the foreclosure action and the subsequent appeal, which were almost entirely incurred after the Receiver filed her Motion to Stay and the Mira Plaintiffs were notified of this Court's Orders in this action staying all ancillary actions and freezing the assets of the Receivership entities; and

b. The Mira Plaintiffs increased the interest to be charged on the Property from the 18% default rate they set forth in the Complaint for foreclosure filed in Brevard County to 25%, the maximum allowed by law.

32. Having received this payoff information, and in light of the foregoing, counsel for the Receiver attempted to negotiate the interest rate and attorney's fees set forth in the payoff statement. Despite these efforts, the Mira Plaintiffs have refused to adjust the interest rate to the 18% demanded in the foreclosure complaint or to reduce the attorney's fee demand.

33. Accordingly, the Receiver seeks to have this Court determine the proper interest and the amount of attorney's fees to be awarded to the Mira Plaintiffs to clear the mortgage lien from the Property so that the Receiver may sell same, as this Court has previously Ordered.

## ARGUMENT

The Court's power to supervise an equity receivership and to determine the appropriate actions to be taken in the administration of the receivership is extremely broad. *See S.E.C. v. Elliott*, 953 F.2d 1560, 1566 (11th Cir. 1992); *see also S.E.C. v. Hardy*, 803 F.2d 1034, 1038 (9th Cir. 1986); *Fed. Trade Comm'n v. MOBE Ltd.*, Case No. 6:18-CV-862-ORL-37DCI, 2021 WL 50335, at *1 (M.D. Fla. Jan. 6, 2021); *Fed. Trade Comm'n v. E.M. Sys. & Servs., LLC*, Case No. 8:15-cv-1417-T-23EAJ, 2016 WL 11110381, at *2 (M.D. Fla. Mar. 4, 2016). The Court's wide discretion derives from the inherent powers of an equity court to fashion relief. *See Elliott*, 953 F.2d at 1566; *See also S.E.C. v. Safety Finance Service, Inc.*, 674 F.2d 368, 372 (5th Cir. 1982); *MOBE Ltd.*, 2021 WL 50335, at *1; *E.M. Sys. & Servs., LLC*, 2016 WL 11110381, at *2.

A court imposing a receivership assumes custody and control of all assets and property of the receivership, and it has broad equitable authority to issue all orders necessary for the proper administration of the receivership estate. *See S.E.C. v. Credit Bancorp Ltd.*, 290 F.3d 80, 82-83 (2d Cir. 2002); *S.E.C. v. Wencke*, 622 F.2d 1363, 1370 (9th Cir. 1980). The court may enter such orders as may be appropriate and necessary for a receiver to fulfill his duty to preserve and maintain the property and funds within the receivership estate. *See Official Comm. of Unsecured Creditors of Worldcom, Inc. v. S.E.C.*, 467 F.3d 73, 81 (2d Cir. 2006); *see also Atl. Trust Co. v. Chapman*, 208 U.S. 360, 371

(1908) ("It is the court itself which has the care of the property in dispute. The receiver is but the creature of the court; he has no powers except such as are conferred upon him by the order of his appointment and the course and practice of the court.").

Any action taken by a district court in the exercise of its discretion is subject to great deference by appellate courts. *See United States v. Branch Coal*, 390 F.2d 7, 10 (3d Cir. 1969); *see also Bendall v. Lancer Mgmt. Grp., LLC*, 523 Fed.Appx. 554, 557 (11th Cir. 2013) ("[A]ny action by a trial court in supervising an equity receivership is committed to his sound discretion and will not be disturbed unless there is a clear showing of abuse.") (internal citation and quotation omitted); *S.E.C. v. Pension Fund of Am. L.C.*, 377 Fed.Appx. 957, 961 (11th Cir. 2010) (same); *MOBE Ltd.*, 2021 WL 50335, at *1; *E.M. Sys. & Servs., LLC*, 2016 WL 11110381, at *2 (same). Such discretion is especially important considering that one of the ultimate purposes of a receiver's appointment is to provide a method of gathering, preserving, and ultimately liquidating assets to return funds to creditors. *See S.E.C. v. Safety Fin. Serv., Inc.*, 674 F.2d 368, 373 (5th Cir. 1982) (court overseeing equity receivership enjoys "wide discretionary power" related to its "concern for orderly administration") (citations omitted).

In *In re Real Property Located at Redacted Jupiter Drive, Salt Lake City, Utah*, 2007 WL 7652297 (D. Utah 2007), the court determined that it was

proper for the secured creditors to only be able to recover simple interest on the amount of their loan. *Id.* at *9. More specifically, the court determined that, "to the extent some of the lenders are contractually entitled to additional penalties for non-payment of their loans, and the non-payment has resulted only from the fact of the receivership having been initiated, then the amount of all such penalties should be disallowed." *Id.*

In *Securities and Exchange Commission v. Capital Cove Bancorp LLC*, 2015 WL 9701154 (C.D. California October 13, 2015), the court reached a similar conclusion. Therein, the court relied upon various bankruptcy decisions in concluding that staying all post-receivership default interest satisfies the primary purpose of receiverships. The court stated:

> In the bankruptcy context, courts have found that a secured creditor's entitlement to default interest under 11 U.S.C. § 506(b) is subject to equitable considerations, including whether the application of default interest will harm junior or unsecured creditors. *See, e.g., Gen. Elec. Capital Corp. v. Future Media Prods. Inc.*, 547 F.3d 956, 960 (9th Cir.2008)(noting that a party's default interest is "subject ... to reduction based upon any equities involved."); *In re 785 Partners LLC*, 470 B.R. 126, 134 (Bankr.S.D.N.Y.2012) (stating that post-petition default interest may not be allowed where "the application of the contractual interest rate would harm the unsecured creditors."); *In re Jack Kline Co. Inc.*, 440 B.R. 712, 747 (Bankr.S.D.Tex.2010) (applying a "balancing of the equities test" to determine whether to apply post-petition default interest); *In re DWS Invs., Inc.*, 121 B.R. 845, 849–50 (Bankr.C.D.Cal.1990) (refusing to apply a post-petition default interest rate in part because "[t]he estate is insolvent and the unsecured creditors are unlikely to receive a distribution" if the rate is applied). In fact, courts have recognized that this consideration of whether junior or unsecured creditors will be

11

> harmed "has special significance." *In re Jack Kline Co.*, 440 B.R. at 747 (finding that "this factor weighs heavily against allowing any default interest rate charged by Central Bank.").
>
> The Receiver argues "[i]t cannot seriously be disputed" that the accrual and imposition of post-receivership default interest will harm junior and unsecured creditors. (Claims Bar Reply at 6, Doc. 111.) Because the Receiver provides substantial evidence that Defendants' collective assets will be insufficient to pay all claimants 100% of the amounts claimed, and that many unsecured and junior creditors are most at risk for losing their potential recoveries, the Court finds that ongoing default interest rates would directly harm junior and unsecured creditors. "It is manifest that the touchstone of each decision on allowance of interest in ... receivership ... has been a balance of equities between creditor and creditor or between creditors and the debtor." *Green*, 329 U.S. at 165. As a result, the Court finds that staying all post- receivership default interest satisfies the "primary purpose" of receiverships, which is "to promote orderly and efficient administration of the estate" for the benefit of all creditors. *See Hardy*, 803 F.2d at 1038.

*Id.* at *11-12.

Without question the Receiver recognizes the creditors' pre-existing state law security interest in the Receivership property and that the Receiver takes property subject to all liens, priorities, or privileges existing under the laws of the state. However, the Receiver is requesting that this Court prohibit the Mira Plaintiffs from recovering the default interest rate of 25% it now seeks, which it did not even seek in the state court foreclosure proceedings, and those fees it incurred after it was notified of this Court's Order.

In an effort to avoid significant expenses that would necessarily and substantially reduce the recovery for the investors, the Receiver attempted to

stay the pending foreclosure action filed by the Mira Plaintiffs and assured these parties that the mortgage would be paid upon the sale of the Property. Despite these assurances, repeatedly made over the course of the action, the Mira Plaintiffs needlessly and unnecessarily continued to accrue significant fees in prosecuting the foreclosure action and in appealing the state court's order staying the proceeding, all to the detriment of the investors. The Receiver has been tasked by this Court with marshalling, preserving, and ultimately distributing the assets of the Receivership for the benefit of these investors, and by substantially increasing the subject interest rate from 18%, the amount initially demanded, to the 25% rate now requested, and by accruing significant fees fighting a state-court imposed stay, following this Court's asset freeze, the Mira Plaintiffs are only impacting and adversely affecting the ultimate recovery of the investors.

The Mira Plaintiffs have been and remain unwilling to negotiate these amounts for purposes of returning to the investors as much as possible under the terms of the Receivership. The Receiver has incurred substantial expenses to restore and repair the property for purposes of its sale and have maximized the return on the Property by listing the Property for sale and obtaining a sale price that reflects these repairs. The Property has sold for its highest and best price, which is reflective of the Receiver's efforts. If the Mira Plaintiffs had foreclosed, and/or if they were permitted to proceed with their foreclosure

13

action, it is unlikely that the Property would have been repaired/restored or sold in such a way to maximize the return for the investors. The Receiver has engaged in these efforts, and by not only increasing the interest rate to be charged on the mortgage/note, but by continuing to accrue significant fees to oppose the Receiver's stay, the Mira Plaintiffs have thwarted this Court's Order freezing the assets and staying all ancillary proceedings.

As counsel for the Receiver informed the Brevard County Circuit Court Judge during the hearing on the Receiver's Motion to Stay, if the Mira Plaintiffs believed that the stay was inappropriate, they could have and should have intervened in this action to challenge this Court's Orders. Instead, it continued to challenge the stay entered by the state court through the circuit court and now in the Fifth District Court of Appeal.

For these reasons, the Receiver asks this Court to limit the recoverable interest to 18% (rather than 25%) and strike their request for attorney's fees incurred after the Receiver informed them of this Court's stay.

## **LOCAL RULE 3.01(G) CERTIFICATION**

The Receiver has conferred with counsel for the Mira Plaintiffs who object to the relief sought herein. Neither the SEC nor Mr. Maroney object to the relief sought herein.

14

Dated: December 13, 2022

        Respectfully submitted,

        */s/ Nicole Deese Newlon*
        NICOLE DEESE NEWLON
        Florida Bar No. 832391
        nnewlon@jclaw.com
        JOHNSON, CASSIDY,
        NEWLON & DECORT, P.A.
        3242 Henderson Blvd., Ste 210
        Tampa, Florida 33609
        Telephone: (813) 699-4859
        Facsimile: (813) 235-0462
        Secondary: kdonlon@jclaw.com;
        bwalker@jclaw.com
        *Counsel for Receiver*
        *Katherine Donlon*

## CERTIFICATE OF SERVICE

      I HEREBY CERTIFY that on December 13, 2022, a true and correct copy of the foregoing was electronically filed with the United States District Court, Middle District of Florida, by using the CM/ECF System, which will serve a copy on all counsel of record.  Further, undersigned counsel has caused to be served a copy of this Motion on all counsel for the Mira Plaintiffs, including:

Albert D. Rey, Esquire,
adrey@bellsouth.net
Albert D. Rey, P.A.,
12955 SW 42nd Street, Suite 6
Miami, Florida 33175
idelsyevora@bellsouth.com
adreyteam@gmail.com

Christopher V. Carlyle, B.C.S.
ccarlyle@appellatelawfirm.com
The Carlyle Appellate Law Firm
121 S. Orange Avenue, Ste. 1500
Orlando, Florida 32801
served@appellatelawfirm.com
psullivan@appellatelawfirm.com

Hugo V. Alvarez, Esquire,
halvarez@beckerlawyers.com
Becker & Poliakoff, P.A.,
121 Alhambra Plaza, 10th Floor
Coral Gables, Florida 33134

                                    */s/ Nicole Deese Newlon*
                                    Attorney