UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

SECURITIES AND EXCHANGE
COMMISSION,

    Plaintiff,

v.                Case No: 6:21-cv-694-CEM-DCI

HARBOR CITY CAPITAL CORP.,
HARBOR CITY VENTURES, LLC,
HCCF-1 LLC, HCCF-2 LLC, HCCF-3
LLC, HCCF-4 LLC, HCCF-5 LLC,
HARBOR CITY DIGITAL VENTURES,
INC., HCC MEDIA FUNDING, LLC,
JONATHAN P. MARONEY, CELTIC
ENTERPRISES, LLC and TONYA L.
MARONEY,

    Defendants.

---

ORDER AND ORDER TO SHOW CAUSE

I.  **Background**

On October 25, 2022, the Court approved the sale of a certain piece of real property (the Property) owned by Celtic Enterprises, LLC (Celtic), one of the Receivership Entities. Doc. 118. A variety of other entities[1] (collectively, Benworth) have asserted an interest in the Property through a mortgage note. Doc. 125-1 at 21. The Receiver now seeks to have the Court determine the amount that Benworth is due to receive through the sale of the Property. Doc. 125 (the Motion).

---

[1] These entities include Benworth Capital Partners, LLC, the entity who originally acquired the Note (Doc. 125-1 at 16–18), as well as a group of entities that acquired the Note from Benworth Capital Partners, LLC. Doc. 125-1 at 21. These entities are: Capital Partners 2, LLC; Benfam Holdings LLC; Mira Holdings, LLC; The Maria L. Santayana Living Trust; and ZF Capital LLC (collectively, the Mira Lenders). *Id.* Benworth Capital Partners, LLC is the servicer for the Note and has appeared on behalf of the Mira Lenders. Doc. 133 at 2. Benworth Capital Partners, LLC also filed the state foreclosure action on behalf of the Mira Lenders. Doc. 125-1 at 14–15

Specifically, the Receiver seeks to have the Court "limit the recoverable interest to 18% (rather than 25%) and strike [Benworth's] request for attorney's fees incurred after the Receiver informed them of this Court's stay." *Id.* at 14.  The Motion is due to be denied without prejudice.

After the time to respond had elapsed, Benworth filed an "emergency" motion for an extension of time to respond to the Motion.  Doc. 127 (the Motion to Extend).  The Court held a hearing on the Motion to Extend on January 5, 2023.  For the reasons stated at that hearing—in particular, the lack of good cause justifying an extension—the Motion to Extend is due to be denied.

Despite not being granted an extension to respond to the Motion, Benworth filed a response to the Motion.  Doc. 133 (the Response).  The Response is untimely, and thus it is not due to be considered.  However, the Court notes that Benworth asserts that this Court lacks jurisdiction over the Property and that the state court is the proper forum for this dispute.  For the reasons explained below, the Court finds that this Court has exclusive jurisdiction of the Property.

## II.   Discussion

### a.   Procedural Background

On April 21, 2021, the Court entered a Temporary Restraining Order (the TRO) that, among other things, froze the assets of the Receivership Entities, including Celtic.  Doc. 6-1 at 7–8.  On April 27, 2021, the Court extended the TRO through May 7, 2021.  Doc. 20.  The Court thereafter extended the TRO through May 19, 2021.  Docs. 31, 38.  Then, on May 19, 2021, the Court converted the TRO to a preliminary injunction.  Doc. 56.  On August 11, 2021, the Court appointed Katherine Donlon (the Receiver) to serve as Receiver over the Receivership Entities, including Celtic.  Doc. 68.  On November 8, 2021, the Court fully laid out the scope of the Receiver's powers and enjoined all ancillary proceedings involving Receivership property.  Doc.

75 (the Order Staying Litigation) *accord* Doc. 72-1 at 13.  It is undisputed that the Property is Receivership property; the Property is owned by Celtic, one of the Receivership Entities.

During the pendency of this case, on October 19, 2021, Benworth filed a state court foreclosure action (the Foreclosure Action) in which Benworth sought to foreclose on the Property. Doc. 133 at 5.  Benworth asserted that Celtic had defaulted on its payments due under the Note from June 1, 2021 onwards.  *Id.*

The Receiver asked Benworth to agree to a stay of the Foreclosure Action due to the Order Staying Litigation; Benworth declined.  Doc. 81 at 16.  So, the Receiver filed a motion to stay the Foreclosure Action.  *Id.*  On April 19, 2022, the state court considered the motion to stay the Foreclosure Action and explained that:

> The [Federal] court has taken jurisdiction of this matter, this party, **this asset**. The federal court has entered its three orders and the relief being requested, for either security or payments or relief to be allowed to continue the foreclosure, all has to be asked of the federal court, the district court that has entered the Order. So[,] the Motion for Stay will be granted.

Doc. 125-7 at 25 (emphasis added).  On June 9, 2022, the state court entered a written order staying the Foreclosure Action.  Doc. 125-8.  On June 23, 2022, Benworth sought to have the state court reconsider that ruling, Doc. 125-9 at 2–11, which the state court denied, *id.* at 12–13.  On July 11, 2022, Benworth appealed the state court's orders, which appeal is still being litigated.  Doc. 125-10.

### b.  Exclusive Jurisdiction

The Court first turns to the underlying state court dispute between the Receiver and Benworth.  For over a year, Benworth has been litigating the Foreclosure Action despite the Order Staying Litigation, causing the Receiver to expend significant resources in an ancillary proceeding.

The state trial court has already rejected Benworth's arguments—twice—and this Court does as well; this Court has exclusive jurisdiction over the Property.

Courts have recognized the conflicts resulting from concurrent in rem (or quasi in rem) proceedings involving the same property, so "[t]he principle applicable to both federal and state courts [is] that the court first assuming jurisdiction over property may maintain and exercise that jurisdiction to the exclusion of the other[.]" *Princess Lida of Thurn and Taxis v. Thompson*, 305 U.S. 456, 466 (1939) (citing *U.S. Bank of New York & Trust Co.*, 296 U.S. 463, 477 (1936)).  This principle "is not restricted to cases where property has been actually seized under judicial process before a second suit is instituted, but applies as well where suits are brought to marshal assets, administer trusts, or liquidate estates, and in suits of a similar nature where, to give effect to its jurisdiction, the court must control the property." *Id.* (citing *U.S. Bank*, 296 U.S. at 477, other citations omitted).  "If the two suits are in rem or quasi in rem, so that the court must have possession or control of the res in order to proceed with the cause and to grant the relief sought, the jurisdiction of one court must of necessity yield to that of the other." *U.S. Bank*, 296 U.S. at 477.

The state foreclosure action is an in rem, or at minimum a quasi in rem, proceeding.  Doc. 125-1 at 7–9.  And "[i]t cannot be disputed that a receivership action is one in rem or quasi in rem." *Sumrall v. Moody*, 620 F.2d 548, 550 (5th Cir. 1980).[2]  So, both this case and the Foreclosure Action are in rem (or quasi in rem) proceedings involving the Property.  Thus, the court that first exercised jurisdiction over the Property has exclusive jurisdiction of the Property. *See Princess Lida*, 305 U.S. at 466.

---

[2] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

This Court may have acquired jurisdiction of the Property as early as May 19, 2021, when the Court entered a preliminary injunction against the Receivership Entities, but this Court certainly acquired jurisdiction of the Property no later than August 11, 2021, when the Court appointed the Receiver.  Docs. 56, 68; *see Wabash R. Co. v. Adelbert College of Western Reserve Univ.*, 208 U.S. 38, 46 (1908) ("[T]he railroad property affected by this controversy was in the actual possession, through receivers, of circuit courts of the United States from the date of the appointment of receivers[.]"); *cf. Penn General Casualty Co. v. Commonwealth of Pennsylvania ex rel. Schnader*, 294 U.S. 189, 196–197 (1935) ("Where the assertion of jurisdiction by the two courts is nearly simultaneous, it becomes important, as in the present case, to determine the precise time when the jurisdiction attaches. . . . [S]ince the bill was filed in the District Court before the application of the Attorney General to the state court, the jurisdiction of the District Court first attached; *it has asserted this jurisdiction by its injunction order*.") (emphasis added). Comparatively, the Foreclosure Action was filed in state court on October 19, 2021.  Doc. 133 at 5.  Thus, this Court asserted jurisdiction over the Property at least two months before the state foreclosure action was filed.  As the first court to assert jurisdiction over the Property, this Court has exclusive jurisdiction of the Property.  *See Princess Lida*, 305 U.S. at 466.

### c. Notice

The Court turns to Benworth's notice of the filings in this case.  In the Response, Benworth claims that it "was never provided notice of the Receiver's 'Unopposed' Motion to Approve Private Sale [ECF No. 111]."  Doc. 133 at 6 n.7.  But that cannot be so.

On December 7, 2021, one of Benworth's counsel, Mr. Rey, appeared in this Court on behalf of Benworth.  Doc. 78; Local Rule 2.02(b).  Mr. Rey has not withdrawn from this case and is still listed on the Court's CM/ECF system as counsel of record for Benworth, which includes

Mr. Rey's email address.  *E.g.,* Local Rule 2.02(c).  So, Benworth has received notice of every filing in this case through Mr. Rey since December 7, 2021, including the Receiver's motion to approve the sale of the Property which was filed on September 2, 2022.  Doc. 111.  Moreover, the Receiver gave Benworth notice of this case, and in particular the Order Staying Litigation, via email on December 8, 2021.  *See* Doc. 125-4.

Despite receiving notice of every filing in this case since December 7, 2021, Benworth did not timely respond—or respond at all—to the Receiver's motion to approve the sale of the Property.[3]  Doc. 111; Local Rule 3.01(c).  Benworth also did not timely respond to the instant Motion, nor did it file a timely motion for an extension of time to respond.  Benworth has had ample opportunity to present its position on the Property throughout this case but has chosen not to.

More generally, it is also worth noting that the Court specifically informed Benworth's counsel at the hearing—which Mr. Rey attended as one of Benworth's counsel—that the Court verified that Mr. Rey, and by extension Benworth, was receiving notice of the filings in this case through the Court's CM/ECF system.  Moreover, at the hearing, Mr. Rey stated that Benworth obtained additional counsel upon receiving notice of the instant Motion; it is wholly unclear how Benworth somehow received notice of the instant Motion but not of the motion to approve the sale of the Property.  In sum, the representation that Benworth did not receive notice of the Receiver's motion to approve the sale of the Property cannot be true.  Doc. 133 at 6 n.7.  And while Benworth may be a non-party to this action, Federal Rule of Civil Procedure 11 applies to all counsel making representations to the Court.

---

[3] Notice of the sale of the Property was also published in a newspaper of general circulation.  Doc. 112-1.

**d. The Order Staying Litigation**

This Court has exclusive jurisdiction of the Property, this Court's Order Staying Litigation applies to the Foreclosure Action, Benworth received notice of this Court's Order Staying Litigation, and this Court's stay of ancillary proceedings applies against non-parties who have received notice of the Order Staying Litigation. Doc. 72-1 at 11–14 *accord* Doc. 75; *see S.E.C. v. Wencke*, 622 F.2d 1363, 1371 (9th Cir. 1980) ("Where, as here, the stay provides that parties may seek leave of the district court to proceed against the receivership entities . . . a district court in an SEC enforcement action may . . . stay proceedings against a court-imposed receivership, and [] such a stay can be made effective against persons not parties to the SEC action who have notice of the stay.").

The Order Staying Litigation provides, in relevant part:

The Receivership Entities **and all persons receiving notice of this Order by** personal service, **email,** overnight delivery, mail, facsimile **or otherwise, are hereby restrained and enjoined** from directly or indirectly taking any action or causing any action to be taken, without the express written agreement of the Receiver, which would:

> **Interfere with the Receiver's efforts to take control, possession, or management of any Receivership Property**; **such prohibited actions include** but are not limited to, using self-help or executing or issuing or causing the execution or issuance of any court attachment, subpoena, replevin, execution, or **other process for the purpose of impounding or taking possession of or interfering with or creating or enforcing a lien upon any Receivership Property**;

> . . .

> **Dissipate or otherwise diminish the value of any Receivership Property**; **such prohibited actions include** but are not limited to, releasing claims or disposing, transferring, exchanging, assigning or in any way conveying any Receivership Property, enforcing judgments, assessments or claims against any Receivership Property or any Receivership Entity, **attempting to modify, cancel, terminate, call, extinguish, revoke or accelerate (the due date), of any lease, loan, mortgage, indebtedness, security agreement or**

**other agreement executed by any Receivership Entity or which otherwise affects any Receivership Property;**

. . .

As set forth in detail below, **the following proceedings**, excluding the instant proceeding and all police or regulatory actions and actions of the Commission related to the above-captioned enforcement action, **are stayed until further Order of the Court**:

> **All civil legal proceedings of any nature, including** . . . **foreclosure actions** . . . **involving**: (a) the Receiver, in Receiver's capacity as Receiver; (b) **any Receivership Property, wherever located**; (c) any of the Receivership Entities, including subsidiaries and partnerships . . . (such proceedings are hereinafter referred to as "Ancillary Proceedings").

**The parties to any and all Ancillary Proceedings are enjoined from commencing or continuing any such legal proceeding**[.]

Doc. 72-1 at 11–14 (emphasis added) *accord* Doc. 75.

It is beyond dispute that the Property is "Receivership Property" owned by Celtic (one of the "Receivership Entities") and that this Court unambiguously enjoined all legal proceedings involving "Receivership Property," including foreclosure actions. *Id.* While Benworth may not have had notice of this Court's Order Staying Litigation when Benworth first filed[4] the Foreclosure Action, the Receiver provided notice of this case and the Order Staying Litigation to Benworth shortly thereafter. *See* Doc. 125-4. The Court also notes that in the Order Staying Litigation, this Court enjoined not only commencing but also continuing ancillary proceedings. Doc. 72-1 at 13 *accord* Doc. 75. In short, the Order Staying Litigation applies to Benworth's continual pursuit of the Foreclosure Action.

---

[4] Mr. Rey filed the Foreclosure Action on behalf of Benworth. Doc. 125-1 at 15.

Benworth asserts that this Court erred in enjoining the Foreclosure Action.[5]  But since appearing in this case over a year ago, Benworth has not once asked the Court for any relief vis-à-vis the Property.  *See, e.g., Liberte Capital*, 462 F.3d at 552 ("To the extent that a party has a colorable claim against a receiver or the entities in receivership, due process demands that the claimant be heard, but the district court exercises significant control over the time and manner of such proceedings.").  Nine months ago, the state court aptly explained to Benworth that "the relief being requested, for either security or payments or relief to be allowed to continue the foreclosure, all has to be asked of the federal court[.]"  Doc. 125-7 at 25.  Despite the state court's rulings and the Order Staying Litigation, Benworth has refused to come to this Court and has instead steadfastly pursued the Foreclosure Action for over a year, which pursuit evinces an apparent campaign to subvert this Court's authority over the Property.  *E.g.,* Doc. 127 at 2 ("Benworth does <u>not</u> consent to personal jurisdiction in this matter.") (emphasis original).

Even if Benworth were correct in that this Court erred in enjoining the Foreclosure Action, Benworth's contumacy is not justified.  "Errors must be corrected by appeal and not by disobedience.  A person proceeded against for disobeying an injunction can never set up as a defense that the court erred in issuing it.  He must go further and make out that in the law there was no injunction because the court had no right to adjudicate."  *Brougham v. Oceanic Navigation Co.*, 205 F.2d 857, 860 (2d Cir. 1913); *see Elliott v. Peirsol's Lessee*, 26 U.S. 328, 340 (1828) ("Where a Court has jurisdiction, it has a right to decide every question which occurs in the cause;

---

[5] To the extent Benworth intends to rely on the Anti-Injunction Act, 28 U.S.C. § 2283, the Court notes that the injunction in this case falls under the "necessary in aid of its jurisdiction" exception. *See Burr & Forman v. Blair*, 470 F.3d 1019, 1029 (11th Cir. 2006) ("Courts have upheld injunctions predicated on the 'necessary in aid of its jurisdiction' exception . . . where the federal court in an *in rem* proceeding obtains jurisdiction over the *res* before the state court action involving the same *res* is brought.") (collecting cases).

and whether its decision be correct or otherwise, its judgment, until reversed, is regarded as binding in every other Court."); *see also In re Metz*, 231 B.R. 474, 480 (E.D.N.Y. 1999) ("The United States Supreme Court has held that an order issued by a court with jurisdiction over the subject matter and person must be obeyed by the parties. Such obedience is mandated even if the order was erroneously issued, unless reversed by 'order and proper proceedings.'") (citations omitted).

Benworth may disagree with this Court, but Benworth may not disregard this Court's Orders; "[i]ntentional interference with a receivership in contravention of a district court's blanket stay is punishable by contempt[.]" *Liberte Capital Grp., LLC v. Capwill*, 462 F.3d 543, 552 (6th Cir. 2006); *see Ex parte Tyler*, 149 U.S. 164, 181 (1893) ("No rule is better settled than that, when a court has appointed a receiver, his possession is the possession of the court, for the benefit of the parties to the suit and all concerned, and cannot be disturbed without the leave of the court, and that if any person, without leave, intentionally interferes with such possession, he necessarily commits a contempt of court, and is liable to punishment therefor."). The Receiver has shown considerable restraint in not asking this Court to sanction Benworth or find Benworth in contempt for continuing to prosecute the Foreclosure Action in contravention of the Order Staying Litigation. *Cf.* Doc. 81 ("The Receiver filed a motion to stay in [the Foreclosure Action]. [Benworth] ha[s] not agreed to a stay of the case. The Receiver is attempting to resolve this issue with opposing counsel but if unable to do so, she will file a Motion for Contempt with this Court."). But this Court has the inherent power to "assess attorney's fees as a sanction for the willful disobedience of a court order." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45 (1991) (cleaned up). "The dual purpose of this power is to vindicate judicial authority without resorting to a contempt of court sanction and to make the prevailing party whole." *Purchasing Power, LLC v. Bluestem Brands, Inc.*, 851 F.3d 1218, 1223 (11th Cir. 2017) (citing *Chambers*, 501 U.S. at 46). This Court

also has the power to "initiate civil contempt proceedings *sua sponte* if it satisfies due process."

*U.S. v. Bardell*, No. 6:11-cv-401-RBD-EJK, 2022 WL 1691698, at *17 (M.D. Fla. June 26, 2022),

*adopted by* 2022 WL 4944552, --- F. Supp. 3d ---- (M.D. Fla. Oct. 4, 2022) (citing *First Maryland*

*Leasecorp. v. M/V Golden Egret*, 764 F.2d 749, 758–759 (11th Cir. 1985) and *Hall v. Stone*, 170

F.3d 706, 707 (7th Cir. 1999)).  "At most, due process requires only 'skeletal' protections in civil

contempt proceedings: a show-cause order providing notice and a hearing in which the alleged

contemnor, who may be represented by counsel, can introduce evidence rebutting the allegation

of contempt and testify on its own behalf."  *In re Mclean*, 794 F.3d 1313, 1324 (11th Cir. 2015)

(citation omitted).  "Since failure to obey a court judgment is an indirect contempt, notice by an

order to show cause and a plenary hearing are appropriate."  *First Maryland*, 764 F.2d at 758.

The Court has reason to suspect that Benworth engaged in the "willful disobedience of a

court order," *Chambers*, 501 U.S. at 45, by continuing to litigate the Foreclosure Action after being

given notice of this Court's Order Staying Litigation.  Accordingly, Benworth shall show cause in

writing why it should not be sanctioned and why this Court should not initiate civil contempt

proceedings against it.  In particular, Benworth shall show cause why it, or its counsel, should not

be ordered to make the Receivership estate whole, including but not limited to reimbursing the

Receivership estate for the fees and costs the Receiver expended litigating the Foreclosure Action.

*See S.E.C. v. American Bd. of Trade, Inc.*, 830 F.2d 431, 441–442 (2d Cir. 1987) ("[T]he court

carefully tailored the sanction it imposed to the restitution of assets in order to restore ABT's

noteholders to the position they would have been in if the injunction had been obeyed. The remedy

was thus not punitive, and was limited to the protection of non-party beneficiaries of the

proceeding."); *see also, e.g., S.E.C. v. Adams*, 2019 WL 3996401, at *3 (S.D. Miss. Mar. 13, 2019)

("The Court reiterates its broad authority to protect Receivership Property. Having found that the

Receiver has met her burden, it is ordered that Respondents are in civil contempt. Further proceedings are necessary to determine an appropriate remedy. Ideally, the parties will be put back in the same position as they were prior to the settlement, without the need for the Court to impose fees or fines.") (citation omitted); *see generally* 29 U.S.C. § 1927.

### e. The Receiver's Motion (Doc. 125)

Turning to the Receiver's Motion to have the Court determine the amount that Benworth is due to receive through the sale of the Property, the Court finds that the Motion is due to be denied without prejudice.  To begin with, it is somewhat unclear what effect granting the Motion would have.  The Receiver requests that the Court "limit the recoverable interest to 18% (rather than 25%) and strike [Benworth's] request for attorney's fees incurred after the Receiver informed them of this Court's stay." Doc. 125.  But the Receiver does not provide adequate support for why the Court should limit[6] the appropriate interest rate at 18%.  The Receiver's reasoning appears to sound in equity; Benworth sought an 18% interest rate in the Foreclosure Action, so it may follow that Benworth should not now be allowed to seek a higher interest rate.  But what makes 18% a non-arbitrary interest rate other than that?  For instance, why not 16%?  20%?

The appropriate interest rate is also complicated by the Receiver's cited authority.  It appears to be undisputed that 18%—or 25% as Benworth argues—is a default interest rate.  But the Receiver cites a district court case in which the court disallowed default interest in a receivership action, where the receivership action caused the default.  *See In re Real Property Located at Redacted Jupiter Drive, Salt Lake City, Utah*, 2007 WL 7652297, at *9 (D. Utah Sep. 4, 2007).  Here, the Court froze Celtic's assets starting on April 21, 2021, and consequently, Celtic

---

[6] It is also not clear if the Receiver means for the Court to set the interest rate at 18% definitively, or whether the Receiver means for the Court to "limit" the upper bound of the interest rate at 18%, subject to the Court approving a rate lower than 18% at some other time.

failed to make the payments due under the Note starting on June 1, 2021.  Docs. 6; 125-1 at 10.  It appears that the asset freeze caused Celtic's default, so it is unclear if default interest is appropriate in this case.

Moreover, the Receiver does not address the appropriate timeframe that any interest should accrue for.  The Receiver cites extensively from another district court case in which the court allowed default interest, but the court stayed default interest from accruing post-receivership. *S.E.C. v. Capital Cove Bancorp LLC*, 2015 WL 9701154, at *11–12 (C.D. Cal. Oct. 13, 2015) ("[T]he Court finds that staying all post-receivership default interest satisfies the 'primary purpose' of receiverships[.]") (citation omitted).  So, even if default interest were appropriate in this case, it is unclear how long default interest should accrue for.

It does appear that Benworth is entitled to recover simple interest on the Note, but it is unclear what an appropriate simple interest rate[7] would be.  *See In re Jupiter Drive*, 2007 WL 7652297, at *8–9 (finding that secured creditors "be entitled to recover their principal and interest through the date of payment by the Receiver" but also finding that "each secured creditor only be able to recover simple interest on the amount of their loan.").

As to attorney fees, it is questionable whether Benworth may recover attorney fees for pursuing the Foreclosure Action after receiving notice of the Order Staying Litigation—i.e., for engaging in what may be sanctionable conduct.  Even if the Note's provision for attorney fees controls in this case, the Note provides for "reasonable attorneys' fees," Doc. 125-1 at 17, and

---

[7] The Court notes that the contractual simple interest rate provided for in the Note (9.75%) is over 6 percentage points higher than the applicable prime rate (3.25%) at the time the Note was created. Doc. 125-1 at 16; *see* Historical Prime Rate, J.P. Morgan Chase & Co., https://www.jpmorganchase.com/about/our-business/historical-prime-rate; *see also, e.g., Till v. SCS Credit Corp.*, 541 U.S. 465, 479–480 (2004) (in Chapter 13 Bankruptcy creditor context, rejecting presumptive contract interest rate approach and endorsing formula approach for calculating interest rate of "prime rate" plus "risk adjustment.").

Benworth's continual pursuit of the Foreclosure Action appears less than reasonable.  But the Court finds that it would be more economical to fully address the attorney fees issue together with the interest rate issue in a subsequent motion, so the Court will not yet definitively rule on the attorney fees issue.

For the foregoing reasons, the Court finds that the Motion is due to be denied without prejudice.

### f.  Sale of the Property

At the hearing, it was represented that this dispute is preventing the sale of the Property from being finalized.  However, the Court has already judicially approved the sale of the Property. Doc. 118.  In the motion seeking judicial approval of the sale, Receiver asked that the Court "order[] that the Receiver may transfer title to the Property by Receiver's Deed to the Buyer, free and clear of all claims, liens, and encumbrances."  Doc. 111 at 9.  The undersigned recommended that that motion be granted in full, Doc. 113, which the presiding District Judge adopted, Doc. 118. Again, Benworth did not respond to that motion.

To be sure, "it has long been recognized that under appropriate circumstances, a federal court presiding over a receivership may authorize the assets of the receivership to be sold free and clear of liens and related claims."  *Capital Cove*, 2015 WL 9701154, at *4 (quoting *Pennant Mgmt., Inc. v. First Farmers Fin., LLC*, 2015 WL 4511337, at *4 (N.D. Ill. July 24, 2015)).  When courts have authorized receivership assets to be sold free and clear of liens, courts have often transferred the liens from the asset itself to the proceeds of the sale.  *See id.* at *8 ("In this case, liens will attach to the proceeds of the sale with those liens, claims, and encumbrances to maintain the same force, effect, and priority against the sales proceeds as existed at the time of the closing of the sale.") (internal quotation marks omitted); *see also Pennant Mgmt., Inc.*, 2015 WL 5180678,

at *6 (N.D. Ill. Sep. 4, 2015) ("[T]he Court finds that a sale of the Hospitality Properties free and clear of all Interests, with such Interests attaching to the Sale Proceeds with the same force and in the same priority as currently exists, will maximize the potential recoveries of the alleged defrauded investors while still protecting the rights of claimants with Interests in the Hospitality Properties.").

Here, the proceeds from the approved sale[8] exceed the alleged value[9] of Benworth's lien, so it is somewhat unclear why this dispute is preventing the sale from being finalized; to the extent the Court's orders require clarification or some specific relief is appropriate, a motion should be filed without delay.

## III.   Conclusion

Accordingly, for the foregoing reasons, it is hereby **ORDERED** that:

1) The Motion (Doc. 125) is **DENIED without prejudice**;

2) The Motion to Extend (Doc. 127) is **DENIED**;

3) **On or before February 13, 2023,** Benworth shall **SHOW CAUSE** in writing why it should not be sanctioned and why this Court should not initiate civil contempt proceedings against it—that response to this Order to Show Cause shall be no longer than 25 pages;

4) **On or before February 27, 2023,** the Receiver and any other interested party may file a reply of no more than 20 pages to Benworth's response; and

---

[8] The Court approved the sale of the Property at a price of $2,925,000.00.  Docs. 111, 113, 118.

[9] Benworth has asserted that it is due $2,493,742.01 on the Note, including interest and attorney fees.  Doc. 125 at 7.

5) **On or before March 6, 2023,** Benworth may file a sur-reply of no more than 7 pages to any reply filed.

**ORDERED** in Orlando, Florida on January 30, 2023.

DANIEL C. IRICK
UNITED STATES MAGISTRATE JUDGE